**UNITED STATES of America, Appellee,**

v.

**Robert C. MORRISON, Appellant.**

No. 75–2347.

United States Court of Appeals,
Ninth Circuit.

April 7, 1976.

Rehearing Denied June 11, 1976.

Kenneth C. Cory (argued), Las Vegas, Nev., for appellant.

William B. Terry, Asst. U. S. Atty. (argued), Las Vegas, Nev., for appellee.

Before DUNIWAY and GOODWIN, Circuit Judges, and THOMPSON,[*] District Judge.

GOODWIN, Circuit Judge:

Robert C. Morrison, convicted of misappropriating less than $100 in postal funds, a misdemeanor, in violation of 18 U.S.C. § 1711, objects: (1) that the complaint was defective in not alleging a *mens rea*; (2) that the evidence was insufficient to convict; and (3) that there was a fatal variance between an allegation and the proof.

Morrison was a postal employee in Las Vegas. His cash drawer at one time was short about $250.00. The shortage, under postal regulations, was fully deductible from his pay.[1] Postal regulations also provide that any "overage" in an employee's cash drawer could be used to offset a prior shortage.[2] The government's theory is that Morrison illegally enhanced his offset by misappropriating postal funds.

On July 12, 1974, an agent of the Secret Service handed Morrison a valid but blank money order and told him that he had found it. Morrison wrote his own name as payee, endorsed the money order, and placed it in his cash drawer. This transaction, creating an overage of $40.00 in his favor, reduced his shortage by that amount.

A United States Magistrate tried Morrison. After the magistrate denied Morrison's motion for acquittal, Morrison rested, preserving his legal objections. The district court affirmed the magistrate. Because the complaint failed to allege a crime, we vacate the judgment and remand without deciding the remaining questions.

■ Criminal intent is an element of a violation of § 1711.[3] But the statute[4] does not identify intent as an element of the crime, and the instant complaint[5] does not allege an intent element.

■ The government is confronted by the general rule that an indictment or information which does not set forth each and every element of the offense fails to allege an offense against the United States. *United States v. Debrow,* 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed.2d 92 (1953). The government asserts, however, that the element of intent can be inferred in this case from the statutory allegation that the defendant "converted" postal funds "without authorization by law." *Ramirez v. United States,* 318 F.2d 155, 157–58 (9th Cir. 1963).

Morrison relies on *United States v. Pollack,* 503 F.2d 87 (9th Cir. 1974), where this court struck down an indictment which did

---

[*] The Honorable Gordon Thompson, Jr., United States District Judge for the Southern District of California, sitting by designation.

1. U.S. Postal Service, Financial and Cost Controls § 155.4 (USPS, Fiscal Handbook, Series F–1, March 18, 1975). The union contract also contains a similar regulation, Article XXVIII § 1, Agreement between U.S. Postal Service and American Postal Workers Union, AFL–CIO, et al. (July 21, 1975, to July 20, 1977).

2. U.S. Postal Service, Financial and Cost Controls § 225.412.

3. *United States v. Friend,* 95 F.Supp. 580 (S.D. W.Va.1951); *Withrow v. United States,* 420 F.2d 1220 (5th Cir. 1969).

4. 18 U.S.C. § 1711 provides:
   "Whoever, being a postmaster or Postal Service employee, loans, uses, pledges, hypothecates, or converts to his own use, or deposits in any bank, or exchanges for other funds or property, except as authorized by law, any money or property coming into his hands or under his control in any manner, in the execution or under color of his office, employment, or service, whether or not same shall be the money or property of the United States * * * is guilty of embezzlement * * *.
   "* * *."

5. The complaint states, in pertinent part:
   "That on or about the 12th day of July, 1974, in the Federal Judicial District of Nevada, ROBERT C. MORRISON, being a United States Postal Service employee did convert to his own use and exchange for other funds or property, without authorization by law, the sum of forty dollars ($40.00) which had come into his hands and under his control in the execution of his employment and service as such an employee; all in violation of Title 18, United States Code, Section 1711."

not contain an allegation of the necessary intent element in the crime charged there.

Reference to a recent Supreme Court pronouncement on this problem aids reconciliation of the surface contradiction of *Pollack* and *Ramirez:*

> "Our prior cases indicate that an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hagner v. United States,* 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932); *United States v. Debrow,* 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953). It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.' *United States v. Carll,* 105 U.S. 611, 612, 26 L.Ed. 1135 (1882). 'Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.' *United States v. Hess,* 124 U.S. 483, 487, 88 S.Ct. 571, 31 L.Ed. 516 (1888)." *Hamling v. United States,* 418 U.S. 87, 117–18, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590, 620 (1974).

The district court interpreted the last-quoted sentence to mean that an indictment or complaint which tracked the language of the applicable statute and which specified the facts and circumstances of the particular offense would adequately allege an offense. But that interpretation overlooks the requirement that the complaint set forth all necessary elements.

■ An indictment tracking the language of the statute is usually adequate because statutes usually denounce all the elements of the crime. In this case, however, the statute is silent on *mens rea.* Criminal intent is an element of the crime. Some cases have held that allegations of common-law crimes necessarily implied an allegation of a general criminal intent. *E. g., Pino v. United States,* 125 U.S.App.D.C. 225, 370 F.2d 247 (1966), *cert. denied,* 387 U.S. 922, 87 S.Ct. 2038, 18 L.Ed.2d 977 (1967) (allegation of "assault" implies an allegation of general criminal intent); *United States v. Martell,* 335 F.2d 764 (4th Cir. 1964) (failure to charge "knowingly" in kidnaping indictment was not fatal); and *Jackson v. United States,* 114 U.S.App.D.C. 181, 313 F.2d 572 (1962) (failure to allege "malice aforethought" did not make indictment alleging "murder" defective). In these sorts of situations, the inference of the necessary *mens rea* from an allegation of, *e. g.,* "assault" or "theft" is justified by the long history of prosecuting such crimes only where the requisite criminal intent is present. *See, e. g., Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

The surface contradiction between our decisions in *Ramirez v. United States, supra,* and *United States v. Pollack, supra,* each of which is embraced by one of the parties before us, can be explained by reference to these governing principles. In *Ramirez,* we held that a charge that defendant "did willfully misapply" the banking funds there in question was adequate notice of the necessary element of "intent to injure or defraud" the bank. We grounded our interpretation on a then-recent revision of the underlying statute. That revision deleted the phrase "with intent to injure or defraud" and retained the phrase "did willfully misapply", because the deleted phrase was, according to the reviser, redundant with the retained phrase. We agreed with the reviser that the term actually used, in the context of the factual allegations, was literally and historically a functional equivalent of the term deleted, and thus we held that the allegation of the term used properly charged the term deleted.

In *Pollack,* we held that the element "intent to injure or defraud" a bank applied to

all three subcategories of a statutory banking offense even though those words appear only in the third subcategory; and, since the *Pollack* indictment was silent on *mens rea* in one count and was deficient in two others, we held that the indictment there was insufficient.

■ Both cases involved related[6] banking offenses which required an element of "intent to injure or defraud" a bank. In *Ramirez,* the indictment tracked the language of the statute and alleged an element which historically subsumed the element of "intent to injure or defraud" a bank. In *Pollack,* the government drew up an indictment under a misapprehension of the relevant elements of the offense, and the missing element could not be inferred from the actual charge.[7] Significantly, the *Pollack* court indicated that banking offenses had no common-law background; this history comports with an observation that none of the material elements of the charge fairly implied a general criminal intent. We note in passing that the "intent to injure or defraud" a bank, at issue in *Pollack* and *Ramirez,* is specific intent, which should be specified with greater particularity than a general criminal intent.

■ In this case, an allegation that Morrison "did convert * * * without authorization by law" did not allege all the elements necessary to constitute a criminal offense against the United States. It could have alleged merely a tort.

■ The complaint contains no allegation of "willful" or "knowing" or "intentional" activity which might be said to notify the defendant of the *mens rea* of the crime charged. None of the words actually appearing in the complaint has an historical meaning—either in statutory history or in the common law—which might signal an allegation of *mens rea.* The term "convert" describes a tort but gives no hint that crimi-

nal intent must be present. Indeed, the lack of criminal intent might be inferred. The intent required for conversion is merely an intent to exercise dominion or control over property in a manner inconsistent with the rights of another. W. Prosser, *The Law of Torts* 83 (4th ed. 1971). Therefore, an allegation of conversion neither implies defendant's knowledge that the property was not his nor implies larcenous intent.

We conclude that because the necessary allegation of criminal intent is missing from the complaint, the complaint does not properly allege an offense against the United States.

The judgment is vacated and the cause is remanded.

---

6. The statutes involved in the *Pollack* and *Ramirez* cases both had a common ancestor. See the statutory history set forth in the *Pollack* case.

7. In one count, no *mens rea* was alleged; in two others, the indictment alleged that an unindicted coconspirator was induced by defendants there to "willfully and knowingly" issue an unauthorized letter of credit. No *mens rea* vis-a-vis the defendant was alleged.