UNITED STATES of America,
Plaintiff–Appellee,

v.

Lavon R. KENT, Defendant–Appellant.

No. 88–1088.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 16, 1988.

Decided Aug. 1, 1990.

Abby Abinanti, San Francisco, Cal., for defendant-appellant.

Thomas J. Hopkins, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before PREGERSON, CANBY and BEEZER, Circuit Judges.

PREGERSON, Circuit Judge:

Lavon R. Kent, a Karuk Indian, appeals her conviction after a bench trial for unauthorized residential occupancy of national forest system land. Kent contends that the district court erred in holding that she had no individual aboriginal rights to occupy the land in question. She also contends, for the first time on appeal, (1) that she was entitled to occupy the land because the Department of the Interior had issued her a certificate of eligibility for an allotment in a national forest and because the relevant statute contemplated that an Indian would occupy the land before actually applying for an allotment, and (2) that the government breached its trust responsibility to her as an Indian by bringing criminal proceedings against her. For the reasons discussed below, we reverse.

BACKGROUND

In lieu of a trial, the matter was submitted to the district court on a set of stipulated facts. The stipulated facts include the following. Kent is a member of

the federally recognized Karuk Indian Tribe. Monies had been set aside for taking the Karuk Tribe's lands by the United States government. As a result of this and other acts by the government, the Karuk Tribe's aboriginal title to the land at issue in this case was extinguished. The Karuk Tribe does not have a reservation. Kent moved onto a site at Sandy Bar Creek within the Klamath National Forest in February 1984, and has occupied and possessed that site since then. She has placed a trailer on the site, which she uses as her living quarters, and has planted a garden, which yields food for her sustenance. Kent excludes others from the site.

The United States Forest Service has not issued a special-use authorization to Kent. Nor has the Forest Service granted Kent or anyone else an allotment of land at Sandy Bar Creek. Kent, however, applied for and on June 18, 1982 received a certificate of eligibility from the Department of the Interior which certifies that she is a California Indian who is eligible to obtain an allotment of land in a national forest.

Kent's great-grandmother lived at Sandy Bar Creek continuously until her death in 1870. From approximately 1870 to 1984, no blood relative of Kent lived at Sandy Bar Creek. Kent's mother was born one mile from Sandy Bar Creek and lived there until 1939. Relatives of Kent have Indian allotments just west of Sandy Bar Creek. Every year "since time immemorial" Karuk Indians have traveled along a road immediately adjacent to where Kent resides on Sandy Bar Creek to participate in the Karuk ceremony of Pikiyowish (World Renewal).

On September 4, 1987, the district court issued a decision finding Kent guilty of unauthorized residential occupancy in violation of 16 U.S.C. § 551 (1985) and 36 C.F.R. § 261.10(b) (1988).[1] *United States v. Kent,* 679 F.Supp. 985 (E.D.Cal.1987). The district court subsequently sentenced Kent to a thirty-day jail term and ordered her to pay a $25.00 penalty assessment. The district court stayed its sentence pending appeal. Kent filed a timely appeal from her conviction on February 19, 1988.

### DISCUSSION

■ Kent argues that the district court erred because its holding is based solely on the extinguishment of Kent's tribal aboriginal rights and because it failed to consider whether she had individual aboriginal rights based on her occupancy of the land. The district court expressly held "that the defendant does not possess an aboriginal right—through either her heritage as a Karuk Indian *or her occupancy of the site in question* —to use land in the Klamath National Forest for residential purposes." *Kent,* 679 F.Supp. at 987 (emphasis added). The district court clearly did consider whether Kent had any individual aboriginal rights to occupy the site at Sandy Bar Creek and correctly held that any such rights had been extinguished. *See United States v. Dann,* 873 F.2d 1189 (9th Cir. 1989) (individual aboriginal title exists only when Indian can show that she or her lineal ancestors continuously occupied site, as individuals, beginning before date land was withdrawn from entry). We therefore affirm the district court's holding that Kent does not have any individual aboriginal rights to occupy the land at Sandy Bar Creek.

■ Kent also contends that she is authorized to occupy the land because her certificate of eligibility [2] entitles her to ap-

---

**1.** 16 U.S.C. § 551 requires the Secretary of Agriculture to regulate the occupancy and use of national forests, and further provides that violation of the Secretary's regulations shall be punished by a fine of not more than $500 or imprisonment for not more than six months, or both.

  36 C.F.R. § 261.10(b) states:

  The following are prohibited:

  (b) Taking possession of, occupying, or otherwise using National Forest System lands for residential purposes without a special-use authorization, or as otherwise authorized by Federal law or regulation.

**2.** Kent's certificate of eligibility, dated June 18, 1982, provides in pertinent part: "This is to certify that Lavon R. Kent ... a California Indian, born May 6, 1947, is eligible as.an Indian to receive land ... in a national forest under Section 31 of the Act of June 25, 1910 [the Forest Allotment Act]."

ply for and receive an allotment of land in a national forest and because the Forest Allotment Act of 1910, 25 U.S.C. § 337 (1983),[3] contemplates that an Indian will occupy the land before applying for an allotment.[4] She argues that even though she is not automatically entitled to a site of her choice, the fact that she moved onto the land in question only after being certified eligible to receive an allotment of land within a national forest, coupled with the language of the allotment statute, shows that 36 C.F.R. § 261.10(b) does not apply to her situation.

The government argues that Kent is not eligible to receive an allotment of land in a national forest because, as the government interprets the Forest Allotment Act (25 U.S.C. § 337), only those Indians whose families have continuously occupied the site in question since passage of the Forest Allotment Act in 1910 are entitled to receive allotments of national forest system land. According to the government's interpretation, Kent is not eligible to receive an allotment because her ancestors were not already occupying the site at Sandy Bar Creek upon passage of the Forest Allotment Act and because her family has not continuously occupied the land ever since.

The government also interprets the Forest Allotment Act to mean—the plain language of the statute notwithstanding—that occupancy of national forest system land before applying for an allotment is prohibited by 16 U.S.C. § 551 and 36 C.F.R. § 261.10(b) unless the Indian can trace continuous ancestral occupancy of the site back to 1910. Again, according to the government's interpretation, because Kent cannot trace continuous familial occupancy of the site in question back to 1910, Kent may not occupy the land before receiving an allotment, even should she ultimately be entitled to one. The government makes these arguments even though the Forest Allotment Act and related regulations do not state that continuous occupancy is required and even though Kent has been certified eligible to receive an allotment of land in a national forest.

We need not reach the underlying questions whether Kent is eligible for an allotment or whether she is entitled to occupy the land before applying for an allotment because we find that the government failed to prove that Kent had the *mens rea* necessary to be found guilty of violating 36 C.F.R. § 261.10(b). We also find that because Kent had insufficient notice that her conduct might be unlawful, due process will not permit her conviction to stand.[5]

---

**3.** 25 U.S.C. § 337, states in pertinent part:

> The Secretary of the Interior is authorized, in his discretion, *to make allotments within the national forests* in conformity with the general allotment laws, *to any Indian occupying, living on, or having improvements on land included within any such national forest* who is not entitled to an allotment on any existing Indian reservation, or for whose tribe no reservation has been provided.... All applications for allotments under the provisions of this section shall be submitted to the Secretary of Agriculture who shall determine whether the lands applied for are more valuable for agricultural or grazing purposes than for the timber found thereon; and if it be found that the lands applied for are more valuable for agricultural or grazing purposes, then the Secretary of the Interior shall cause allotment to be made as herein provided. (Emphasis added).

**4.** "The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). To "prevent a miscarriage of justice," *United States v. Greger*, 716 F.2d 1275, 1277 (9th Cir. 1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984), we exercise our discretion in this case to address whether the government's issuance of Kent's certificate of eligibility or the language of the Forest Allotment Act require reversal of Kent's conviction for unauthorized residential occupancy of forest system land.

**5.** Kent also contends that the government breached its trust responsibility to her as an Indian by initiating a criminal action against her. In light of our findings (1) that the government failed to show that Kent possessed the requisite *mens rea* and (2) that Kent did not have sufficient notice that her occupancy of national forest system land might be illegal and subject her to punishment for unauthorized residential occupancy, we need not address this contention.

The information charging Kent with violating 16 U.S.C. § 551 and 36 C.F.R. § 261.10(b) alleged that Kent "did *knowingly* take possession of, occupy and otherwise use National Forest System lands for residential purposes without a special-use authorization, or as otherwise authorized by Federal law or regulation...." (Emphasis added.)[6] The *mens rea* embodied in "knowingly" requires the government to prove as an element of the offense that Kent "voluntarily and intentionally and not by accident or mistake" engaged in the prohibited conduct. *United States v. Jewell*, 532 F.2d 697, 699 (9th Cir.) (en banc), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976); 1 Devitt and Blackmar, *Federal Jury Practice and Instructions*, § 14.04 (3rd ed. 1977). In the present case, unresolved ambiguities (discussed below) in the law relating to allotments of national forest system land to Indians preclude a finding that Kent knew that her occupancy of the site at Sandy Bar Creek was not allowed by federal law.

Kent's certificate of eligibility, issued by the Department of the Interior, states that she is eligible to receive an allotment of land in a national forest. The Forest Allotment Act, 25 U.S.C. § 337, states that the government is authorized to make allotments "to any Indian *occupying, living on, or having improvements on land included within any national forest...*" (Emphasis added.) The government argues that although Kent has a certificate of eligibility, she is not eligible to receive an allotment of land in a national forest. The government also argues that although the language of the Forest Allotment Act can be read to contemplate that an Indian will occupy the land before applying for an allotment, such prior occupancy is in fact illegal. But the certificate of eligibility and

the Forest Allotment Act, on their face, contradict the government's contentions.

No reported cases have interpreted section 337 to determine which Indians are in fact entitled to an allotment or whether occupancy before applying for an allotment is allowed or required by the statute. These are open questions. Given the current unsettled state of the law and the information available to Kent, we find that Kent could reasonably believe that she was permitted by federal law to settle on the land at Sandy Bar Creek. The stipulated facts in this case and the government's unsupported interpretation of the applicable laws cannot sustain a finding beyond a reasonable doubt that Kent had the requisite *mens rea* to be convicted of unauthorized residential occupancy of national forest system land.[7]

In supplemental briefing, the government argues that 36 C.F.R. § 261.10(b) sets forth a strict liability offense, despite the fact that the information alleged that the offense was "knowingly" committed. The government bases its argument on the lack of an explicit *mens rea* requirement in section 261.10(b). But more than omission of a *mens rea* requirement from the definition of an offense is necessary to justify dispensing with an intent requirement. *United States v. United States Gypsum Co.*, 438 U.S. 422, 438, 98 S.Ct. 2864, 2874, 57 L.Ed.2d 854 (1978).

To avoid a construction of the regulation which would "criminalize a broad range of apparently innocent conduct," *Liparota v. United States*, 471 U.S. 419, 426, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1984), we interpret section 261.10(b) to "require[ ] a showing that the defendant knew [her] conduct to be unauthorized" by the regulation. *Id.* at 426, 105 S.Ct. at 2088. *See also United States v. Nofziger*, 878 F.2d 442, 454 (D.C. Cir.) *cert. denied*, —— U.S. ——, 110 S.Ct.

6. The information thus specified the element of criminal intent that was not supplied by 36 C.F.R. § 261.10(b). *See United States v. Morrison*, 536 F.2d 286, 288 (9th Cir.1976) (indictment must specify intent if statute fails to do so).

7. The government has published proposed regulations in the Federal Register which state that an Indian may not occupy the land before receiving an allotment. 52 Fed.Reg. 119, 23475 (1987) (to be codified at 36 C.F.R. pt. 254) (proposed June 27, 1987). These *proposed* regulations, published nearly one year after Kent's arrest, have not been adopted.

564, 107 L.Ed.2d 559 (1989) (interpreting an ambiguous subsection of the Ethics in Government Act as requiring the government to demonstrate that the defendant had knowledge of the facts that made his conduct criminal).

We also reject the government's argument that section 261.10(b) requires application of a strict liability standard because it is a "public welfare offense," i.e., one which renders criminal "a type of conduct that a reasonable person should know is subject to stringent public regulation," because the conduct "seriously threaten[s] the community's health or safety." *Liparota*, 471 U.S. at 433, 105 S.Ct. at 2092. Occupation of Forest Service lands is not an inherently dangerous activity, and the government has not submitted any evidence that Kent's occupancy endangered the public.

■ In addition, we find that the relevant statutes and regulations did not give Kent sufficient notice that her occupancy of the site in question could be illegal. Due process requires that a penal statute give fair warning of what the law "commands or forbids." *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939). *Cf. Dunn v. United States*, 442 U.S. 100, 112, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979) (where Supreme Court discussed its "long-established practice of resolving questions concerning the ambit of a criminal statute in favor of lenity. This practice reflects not merely a convenient maxim of statutory construction. Rather, it is rooted in *fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited*") (citations omitted) (emphasis added); *United States v. Sherbondy*, 865 F.2d 996, 1009 (9th Cir.1988) (rule of lenity requires that where language of penal statute admits of more than

one interpretation, courts should choose least harsh construction).

36 C.F.R. § 261.10(b) in clear language exempts anyone "otherwise authorized under Federal law" from the prohibition against occupying national forest land for residential purposes. As discussed above, this exception could reasonably be understood to apply to Kent. She has a certificate of eligibility which states that she is eligible for an allotment of land in a national forest and she has settled on the land pursuant to the plain language of the Forest Allotment Act which states that the government is authorized to make allotments "to any Indian occupying, living on, or having improvements on land included within any national forest...."

Neither the allotment statute nor the corresponding regulations state that there is a time limit within which an Indian must apply for an allotment after receiving a certificate of eligibility. Nor do they state that continuous ancestral occupancy of the site since 1910 is required before an Indian is eligible to receive an allotment of land in a national forest. We find that the confused and contradictory information available to Kent, statutory and otherwise, failed to provide her with sufficient notice that her conduct might be criminally unlawful. Therefore, her occupancy of Sandy Bar Creek cannot be used as the basis for a criminal prosecution under 16 U.S.C. § 551 and 36 C.F.R. § 261.10(b).

The underlying questions regarding the rights conferred by Kent's certificate of eligibility and the meaning of the Forest Allotment Act should be resolved before Kent can be held criminally responsible for unauthorized residential occupancy. The present criminal prosecution is basically the result of a land dispute between Kent and the Forest Service. Such a dispute can be adjudicated as a civil matter, where the meaning of the relevant statutes and regulations can be fully examined and where Kent's ultimate right to occupy the land can be determined.[8] If Kent now applies

---

**8.** The government indicated at oral argument that it knew of no other reported case in which an Indian has been criminally prosecuted for violating 36 C.F.R. § 261.10(b). Given this history, one wonders why the government should choose to institute criminal proceedings in this

for an allotment, the issue can be resolved through those proceedings. Alternatively, if she fails to apply for an allotment, the government can bring a civil action that will lead to a proper resolution of the underlying land dispute. *See, e.g., United States v. Hells Canyon Guide Service, Inc.,* 660 F.2d 735 (9th Cir.1981) (affirming district court's order permanently enjoining defendant's operation of boat service on river within national forest without a permit).

REVERSED.

CANBY, Circuit Judge, dissenting:

With all due respect, I fear that the majority has fallen into error, in part because it is deciding a different case from the one that was presented to the district court. This case was tried to the district judge on stipulated facts. The defense Kent presented to the district court was that her occupancy of National Forest lands was authorized because she had individual aboriginal title to the land. As the majority correctly decides, the district court properly rejected that contention. *See United States v. Dann,* 865 F.2d 1528, 1533–36 (9th Cir.1989).

On appeal, Kent virtually abandoned her claim of individual aboriginal title. Instead, she argued that her occupancy was authorized by law because she had a certificate of eligibility for an allotment in Forest lands, and because the Forest Act of 1910, 25 U.S.C. § 337, contemplated occupancy of Forest lands by Indians prior to the Secretary's issuing them an allotment. This contention raises complex questions of statutory interpretation that would be difficult to decide on this undeveloped record.

The majority has chosen, therefore, to decide the case on a third ground. It is that, in light of Kent's certificate of eligibility and the provisions of the Forest Act of 1910, she could not have had adequate notice that her possession was illegal; the regulation outlaws only occupancy that is not "otherwise authorized by Federal law

or regulation." 36 C.F.R. § 261.10(b). In so ruling, the majority necessarily decides two issues of law, upon which supplemental briefing was ordered: first, it decides that section 261.10 does not create a strict liability offense and, second, it decides that the requisite scienter is knowledge on the part of the violator that her conduct is unlawful. Finally, the majority decides a question of fact: namely, that Kent lacked the requisite knowledge. In my view, the first two issues are incorrectly decided, and the third should not be decided at all on this record.

The first issue, whether section 261.10 defines a strict liability offense, is the most difficult. We held, however, in *United States v. Wilson,* 438 F.2d 525 (9th Cir. 1971), that 36 C.F.R. § 261.6(a), which prohibits cutting and removing timber in a National Forest without a permit, defined a strict liability crime. It was no defense that the violators were unaware that they had strayed onto a National Forest. I find it difficult to see why one who wanders onto a National Forest and cuts trees should be held strictly liable when one who wanders on and establishes a residence is not.

It is true that strict criminal liability is strong medicine, however. We have accordingly construed 36 C.F.R. § 261.7(a) to require criminal intent. *United States v. Semenza,* 835 F.2d 223 (9th Cir.1987). That regulation prohibits "allowing unauthorized livestock to enter or be in the National Forest System." We construed "allowing" as implying a mental element, and required the government to prove that the violator willfully allowed or willfully failed to prevent the cattle from entering the Forest. *Id.* at 224–25. *See also United States v. Launder,* 743 F.2d 686, 689 (9th Cir.1984) (statute making it a crime to "permit" or "suffer" a fire to spread out of control in National Forest requires proof of a willful act or willful failure to act). In my view, Kent's case is not controlled by *Semenza* or *Launder* because section 261.-

case, especially since less drastic civil measures were available. *See United States v. Langley,* 587 F.Supp. 1258, 1265 (E.D.Cal.1984) (Forest

Service regulations may be enforced by injunction, as well as by criminal action).

10 contains no similar language implying a requisite state of mind. I therefore would consider myself constrained by *Wilson* and would resolve this issue differently from the majority. I concede, however, that the question is a debatable one.

I disagree more strongly with the majority's ruling that Kent could not be convicted of violating section 261.10 unless she knew that her conduct was unlawful. In the first place, the majority is mistaken in concluding that the information, which alleged that Kent "knowingly" set up her residence in the Forest, imposes a requirement of knowledge even if the statute or regulation does not. If there is no mental element in the statutory or regulatory crime, the allegation of knowledge in the information is mere surplusage, and can be ignored in the absence of unfair surprise to the defendant. *See United States v. Jenkins,* 785 F.2d 1387, 1392 (9th Cir.), *cert. denied,* 479 U.S. 855, 889, 107 S.Ct. 192, 288, 93 L.Ed.2d 125, 262 (1986). The majority's reliance on *United States v. Morrison,* 536 F.2d 286 (9th Cir.1976), is misplaced. In *Morrison,* intent was clearly an element of the crime, even though not recited in the statute; the indictment or information therefore was required to allege intent.

But even if knowledge were an element of the crime, it should be sufficient that Kent knew that she was establishing her residence in the National Forest and knew that she did not have a permit. She need not have known that her action was unlawful.

> [T]here are few exceptions to the rule that ignorance of the law is no excuse.... In construing criminal statutes, ... we have often held that "knowingly" does not include knowledge of the law.

*United States v. Sherbondy,* 865 F.2d 996, 1002 (9th Cir.1988). *See also United States v. International Minerals & Chemical Corp.,* 402 U.S. 558, 559–62, 91 S.Ct. 1697, 1698–1700, 29 L.Ed.2d 178 (1971) (statute that punishes person who "knowingly violates any such regulation" requires proof only of knowing commission of prohibited acts; it does not require proof of knowledge of regulation). Here the majority accepts the proper definition of knowledge, requiring Kent to have " 'voluntarily and intentionally and not by accident or mistake' engaged in the prohibited conduct," but then misapplies it. There is no doubt in this case that Kent knew she was residing in a National Forest without a permit. The majority, however, requires the government to prove that she knew her conduct was unlawful.

The majority relies upon *Liparota v. United States,* 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), which does create an exception to the usual rule that ignorance of the law is no excuse. There the Supreme Court construed a statute that provided for the punishment of anyone who "knowingly uses, acquires, alters or possesses" federal food stamps in manner not authorized by statute or regulation. The Court held that Congress intended "knowingly" to require knowledge that a regulation was being violated. *Liparota,* however, involved a felony statute, and the Court feared that any other interpretation "would be to criminalize a broad range of apparently innocent conduct." *Id.* at 426, 105 S.Ct. at 2088. The Court stated:

> A strict reading of the statute with no knowledge-of-illegality requirement would thus render criminal a food stamp recipient, who, for example, used stamps to purchase food from a store that, unknown to him, charged higher than normal prices to food stamp program participants. Such a reading would also render criminal a nonrecipient of food stamps who "possessed" stamps because he was mistakenly sent them through the mail due to administrative error, "altered" them by tearing them up, and "transferred" them by throwing them away.

*Id.* at 426–27, 105 S.Ct. at 2088–89. This catalog of innocent conduct is distinguishable, in my view, from the kind of a deliberate act that is involved in setting up a residence in a National Forest. Moreover, *Liparota* involved potential penalties of five years imprisonment and a $10,000 fine. We deal instead with a misdemeanor with a maximum of six months incarceration and a $500 fine.

The most important point about *Liparota*, however, is that the Supreme Court was interpreting the congressional intent behind the use of the word "knowingly" in the statute. Even in dealing with other statutes containing that term, we have regarded *Liparota* as creating a narrow exception. *See United States v. Moncini*, 882 F.2d 401, 404–05 (9th Cir.1989) (crime of knowingly mailing child pornography does not require proof of knowledge of illegality); *United States v. Aguilar*, 883 F.2d 662, 672–73 (9th Cir.1989) (persons charged with knowingly harboring illegal alien may defend on ground that they did not know of alien's illegal status, but not on ground that they erroneously believed applicable law of asylum to be other than it was). Here, there is no reason to conclude that Congress or the agency intended a broader-than-usual requirement of "knowledge" because neither the statute nor the regulation contains the term.

Finally, the majority necessarily concludes that Kent has not been shown to have possessed the requisite knowledge that her occupancy was unlawful. The issue is one of fact, and the government's failure, if failure there was, is not surprising. Kent's only defense in district court was that she had a valid claim of individual aboriginal title to the land. It is difficult now to determine whether the district court, as trier of fact, might properly have inferred from the stipulated facts that Kent knew her occupancy was unauthorized; the district court was never called upon to make that determination.

Central to the majority's decision is the notion that Kent's occupancy may have been lawful under the Forest Act of 1910, as that of a potential allottee, even though she had never shown any inclination to apply for an allotment. Also implicit in the majority's decision is the idea that Kent's certificate of eligibility for an allotment in National Forest lands might entitle her to the particular tract in issue. I question the soundness of these combined propositions. *See* 43 C.F.R. § 2533.1 (before allotting National Forest land, Secretary must determine that tract in question is more valuable for agriculture or grazing than for timber); *cf. Hopkins v. United States*, 414 F.2d 464, 467–68 (9th Cir.1969) (General Allotment Act did not give Indian vested right to allotment of land simply by his selecting and settling upon it; Secretary must determine that lands can support settler by grazing or agriculture before approving allotment).

I recognize that this is a sympathetic case.[1] But in extricating Kent from her conviction, the majority has adopted, I fear, an interpretation of section 261.1 that will impose too great a burden on the Forest Service in its attempts to control others who might wish to establish residences in the National Forests. It has also unwisely, and I think incorrectly, suggested that its strict knowledge requirement is based on due process. *Liparota* itself grounded its requirement of knowledge of illegality on congressional intent alone, not constitutional compulsion. 471 U.S. at 426–27, 105 S.Ct. at 2088–89. And we have rejected a contention that due process requires that ignorance of the law be a defense for a foreigner charged with violating our laws. *United States v. Moncini*, 882 F.2d at 405–06.

In light of the severe legal and practical problems that flow from interpreting the regulation as one must in order to give relief to Kent, I would affirm the judgment of the district court on the only ground presented to it—that Kent's defense of individual aboriginal title was insufficient.

---

**1.** The district judge also recognized this fact. He offered to give Kent probation if she moved off the land. The offer was refused.