**UNITED STATES of America, Plaintiff,**

v.

**D.A. OSGUTHORPE, Defendant.**

**No. 2:97–CR–252B.**

United States District Court,
D. Utah,
Central Division.

Aug. 11, 1998.

**1216**

Leisha Lee–Dixon, Salt Lake City, UT, for Plaintiff.

Glen Davies, Salt Lake City, UT, for Defendant.

## MEMORANDUM OPINION AND ORDER

BENSON, District Judge.

This matter comes before the Court on defendant's appeal of the magistrate judge's decision and sentencing entered August 11, 1997. For the following reasons the magistrate judge's decision is reversed.

### BACKGROUND

Defendant D.A. Osguthorpe is a 76 year old veterinarian who has been involved in the sheep ranching business for over 40 years. Defendant has routinely put his sheep out to summer pasture in Summit County on private ground located in the mountains above Park City, Utah. This private ground borders the Wasatch–Cache National Forest. There is no indication that, during the relevant time period, Osguthorpe ever held a permit to graze his sheep in the neighboring National Forest. In late 1994, the Forest Service issued a Notice of Violation against Osguthorpe for "placing or allowing unauthorized livestock to enter or be in the National Forest" pursuant to 36 C.F.R. § 261.7(a). Osguthorpe did not contest this Notice of Violation and was subsequently sentenced by the magistrate judge to one year unsupervised probation and fined $65.00.

In November and December of 1996, the Forest Service issued a total of three additional Notices of Violation pursuant to 36 C.F.R. § 261.7 alleging that Osguthorpe was guilty of allowing his livestock to enter or be in the National Forest and failing to remove the livestock when requested by a forest officer. On January 16, 1997, Osguthorpe appeared before the magistrate judge and moved the Court for an order consolidating all three Notices of Violation into a single case. The magistrate judge granted defendant's motion and Osguthorpe entered a plea of not guilty.

On March 5, 1997, Osguthorpe filed a Motion to Determine Legal Standard for Violation of 36 C.F.R. § 261.7(a)—specifically regarding whether § 261.7(a) requires a showing of mens rea in order to find a violation. Following a hearing on May 1, 1997, the magistrate judge found that mens rea is not required for a violation of 36 C.F.R. § 261.7(a). The magistrate judge determined that the Forest Service could prove its case by simply proving that the defendant's sheep were on Forest Service lands without authorization. Following the magistrate judge's ruling, Osguthorpe and the United States Attorney, representing the Forest Service, entered into a conditional plea agreement. Osguthorpe changed his plea to guilty on one of the Notices of Violation and the Forest Service agreed to dismiss the other two Notices of Violation. However, the agreement was conditioned on defendant's retaining the right to appeal the magistrate judge's interpretation of 36 C.F.R. § 261.7(a). If successful on appeal, Osguthorpe may withdraw his guilty plea and proceed to trial. In that event, the Forest Service will be entitled to reassert the other Notices of Violation against Mr. Osguthorpe. On June 2, 1997, the magistrate judge accepted the conditional plea bargain and two months later sentenced Osguthorpe to five years supervised probation, conditioned upon spending 30 days in a halfway house, and imposed a fine of $5,000.00. Defendant appeals both the magistrate judge's decision that mens rea is not required under 36 C.F.R. § 261.7(a) and the sentence imposed following defendant's conditional plea of guilty.

### DISCUSSION

The issue raised on appeal centers on the interpretation of one word: *allowing*. 36

C.F.R. § 261.7(a) prohibits "placing or allowing unauthorized livestock to enter or be in the National Forest System or other lands under Forest Service control." The Forest Service contends, and the magistrate judge agreed, that "placing or allowing" does not require any mens rea and the statute is one of strict liability. Defendant argues that the regulation in question does not eliminate a mens rea requirement. This Court finds that 36 C.F.R. § 261.7(a) is not one of strict liability and does require a showing of mens rea.

## I. Existence of a Mens Rea Requirement

It has long been true that "[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo–American criminal jurisprudence." *Dennis v. United States,* 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137 (1951). Despite this general rule, however, there are criminal statutes that have no intent requirement. Failure to stop at a stop sign is a common example of such a strict liability violation. The question in the instant case is whether 36 C.F.R. § 261.7(a) fits in the strict liability category.

As in all cases of statutory interpretation, we begin with the actual language employed by the regulation in question. The words themselves must be scrutinized to determine whether the legislature has eliminated any mens rea requirement. The words, of course, are to be given their common and ordinary meaning. Indeed,

> [c]ourts should be slow to impart any other meaning than their commonly understood meanings to terms employed in the enactment of a statute, and it is the policy of the courts to avoid giving statutory phraseology a new, curious ... unusual, unnatural, strained or forced, artificial ... or subtle meaning. To the contrary, it is a general rule of statutory construction that words of a statute will be interpreted in their ordinary acceptation and significance, and the meaning commonly attributable to them.

73 Am.Jur.2d., *Statutes* § 206, at 401.

■ The dictionary definitions of the terms *placing* and *allowing* are helpful in interpreting the meaning of § 261.7(a). According to The Random House Dictionary of the English Language (2d ed.1987) the term *placing* means "to put or set in a particular place, position, situation, or relation." *Allowing* is defined as "to give permission to or for ...; to permit by neglect; ... to approve [or] sanction; ... to permit something to happen or to exist." *Id.* The root word *allow* is a synonym of the word *permit* which denotes "granting or conceding the right of someone to do something." *Id.* The common and ordinary meanings of both *placing* and *allowing* indicate that some volition must be present. While *placing* signifies more active participation, *allowing* equally requires some permissiveness, acquiescence or approval. Thus, looking at the plain language of the Act, and applying ordinary definitions to the words employed, it is apparent that the statute does not altogether dispense with the mens rea element. To "allow" one's livestock to be on forest service property requires some level of involvement on the part of the owner. A sheep rancher has not "allowed" his sheep to be on forest service property, for example, if his sheep were released from the owner's locked pen by the action of a third party unknown to the owner and thereafter the sheep moved onto the government's property.

If the Department of Agriculture had wanted to write a strict liability regulation it could have easily done so. "Any person's sheep found on Forest land is guilty of an offense," would be a strict liability regulation. The present regulation is not.

■ Pointing to the legislative history, the Government argues that any mens rea requirement that may have existed in the regulation was removed in the 1977 amended version of 36 C.F.R. § 261.7(a). Prior to 1977, the regulation prohibited "[w]illfully allowing livestock to enter upon or to be upon such lands ...." 35 F.R. 3165 (1970) (emphasis added). The amendment replaced "willfully allowing" with the words "placing or allowing." As drafters of the regulation, the Department of Agriculture did not, however,

add words to indicate that the statute was to be one of strict liability. Therefore, the question is whether the elimination of the word *willfully* did away with any mens rea, or intent, requirement and made the statute one of strict liability. The Supreme Court has made it clear that the "mere omission from [a criminal statute] of any mention of intent will not be construed as eliminating that element from the crimes denounced." *Morissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 250, 96 L.Ed. 288 (1952). In *United States v. United States Gypsum, Co.,* 438 U.S. 422, 438, 98 S.Ct. 2864, 2874, 57 L.Ed.2d 854 (1978) the Supreme Court held that "far *more than the simple omission* of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement." *Id.* (emphasis added). *See also United States v. Kent,* 912 F.2d 277, 280 (9th Cir.1990) (holding that "more than omission of a *mens rea* requirement from the definition of an offense is necessary to justify dispensing with an intent requirement" and that the government must show that the defendant had the necessary mens rea in order to prove a violation of 36 C.F.R. § 261.10(b) which prohibits a person from residing on National Forest lands without authorization). Furthermore, the Supreme Court provided additional guidance in this area when it stated that "[w]hile strict-liability offenses are not unknown to the criminal law and do not invariably offend constitutional requirements, the limited circumstances in which Congress has created and this Court has recognized such offenses, attest to their generally disfavored status." *Id.* Accordingly, this Court is reluctant to dispense with a mens rea requirement without a clear indication that the drafters of the

regulation intended such a result. The removal of the word *willfully* from 36 C.F.R. § 261.7(a) does not create strict liability. In order to prevail, the Forest Service must show that the defendant acted with the necessary mens rea.

## II. The Appropriate Level of Mens Rea

■ Having held that § 261.7(a) is not a strict liability statute, it is left for this Court to determine the appropriate level of mens rea required under the statute. As the Supreme Court has noted "[f]ew areas of criminal law pose more difficulty than the proper definition of the mens rea required for any particular crime." *United States v. Bailey,* 444 U.S. 394, 403, 100 S.Ct. 624, 631, 62 L.Ed.2d 575 (1980). This is especially true where, as in the present case, "the language of the Act provides minimal assistance in determining what standard of intent is appropriate, and the sparse legislative history of the criminal provisions is similarly unhelpful." *United States v. United States Gypsum Co.,* 438 U.S. 422, 443–44, 98 S.Ct. 2864, 2877, 57 L.Ed.2d 854 (1978). In order to arrive at the appropriate level of mens rea, this Court must "turn to more general sources and traditional understandings of the nature of the element of intent in the criminal law [and] try to avoid 'the variety, disparity and confusion' of judicial definitions of the 'requisite but elusive mental element' of criminal offenses." *Id.* at 444, 98 S.Ct. 2864.

Much of the confusion regarding the requisite mens rea has stemmed from a historical shift in traditional mens rea analysis, for which courts have turned to various sources for guidance.[1] The Supreme Court has consistently looked to the Model Penal Code as

---

1. The Court in *Gypsum* offered insight into the confusing nature of criminal intent when it stated that:

> At common law, crimes generally were classified as requiring either 'general intent' or 'specific intent.' This venerable distinction, however, has been the source of a good deal of confusion. As one treatise explained:
>
> "Sometimes 'general intent' is used in the same way as 'criminal intent' to mean the general notion of mens rea, while 'specific intent' is taken to mean the mental state required for a particular crime. Or, 'general intent' may be used to encompass all forms of the mental state requirement, while 'specific intent' is limited to the one mental state

of intent. Another possibility is that 'general intent' will be used to characterize an intent to do something on an undetermined occasion, and 'specific intent' to denote an intent to do that thing at a particular time and place. W. LaFave & A. Scott, Handbook on Criminal Law § 28, pp. 201–02 (1972) (citations omitted)."

*Bailey,* 444 U.S. at 403, 100 S.Ct. 624. The Court also noted that this "ambiguity has led to a movement away from the traditional dichotomy of intent and toward an alternative analysis of mens rea" and that the new approach is exemplified by the American Law Institute's Model Penal Code. *Id.*

an avenue of resolving questions of this nature. *See United States v. Bailey*, 444 U.S. 394, 404, 100 S.Ct. 624, 631, 62 L.Ed.2d 575 (1980) (adopting "knowledge" from the Model Penal Code as the appropriate level of mens rea where the statute in question failed to indicate); *United States v. United States Gypsum Co.*, 438 U.S. 422, 444, 98 S.Ct. 2864, 2877, 57 L.Ed.2d 854 (1978) (concluding that the Model Penal Code is a source of guidance in determining the appropriate level of mens rea and adopting "knowledge" as such level).

As the present issue is one of first impression in the Tenth Circuit, this Court also

finds the Model Penal Code helpful in setting the appropriate level of mens rea required under § 261.7(a).[2] The Model Penal Code replaces the common law distinction between "specific intent" and "general intent" with four general levels of intent: purposely, knowingly, recklessly, and negligently.[3] This "hierarchy of culpable states of mind" is listed in "descending order of culpability" with purposely being the most onerous standard and negligently the most lenient. *Bailey*, 444 U.S. at 404, 100 S.Ct. 624.

The question remaining, therefore, is which of the four levels of culpability should

2. Indeed, there are only two known cases which address the issue at hand, but neither case is particularly helpful in the present case. The Forest Service urges this Court to adopt the reasoning employed in *United States v. Larson*, 746 F.2d 455 (8th Cir.1984). The court in *Larson*, faced with defendant's argument that "the evidence at trial was insufficient to show that [defendant's] violations of 36 C.F.R. § 261.7(a) were intentional" issued the statement "[i]ntent, however, is not an essential element of § 261.7." *Id.* at 456. This statement, the Forest Service argues, indicates the lack of any mens rea requirement and reinforces the strict liability nature of the regulation. As explained above, this Court rejects strict liability and therefore must also reject any such interpretation of *Larson*.

It should be noted, however, that while it is true the court in *Larson* indicated that intent is not an element of 36 C.F.R. § 261.7(a), there is good reason to believe that what the court was trying to convey was that only a certain type of *specific intent* (i.e. either the specific intent to violate the law) was not required under the Act. It makes more sense that what the Eighth Circuit really held was that the specific intent to violate 36 C.F.R. § 261.7(a) was not required under the statute, but general intent remained. Any other interpretation would be inconsistent with the actual reasoning employed by the court.

The Ninth Circuit rejected the *Larson* decision in *United States v. Semenza*, 835 F.2d 223 (9th Cir.1987) (holding that 36 C.F.R. § 261.7(a) requires criminal intent and is not a strict liability statute). However, the Ninth Circuit offers no real help in determining the appropriate standard since it reasoned that the legal term *allow* " 'clearly require[s] a willful act or a willful failure to act in the face of a clear opportunity to do so.' " *Id.* at 224 (quoting the earlier Ninth Circuit decision *United States v. Launder*, 743 F.2d 686 (9th Cir.1984)). The difficulty with such reasoning is the fact that the legislature, as pointed out above, specifically omitted the modifier "willful" from the statute in question. As a result, this Court is left with no case law directly on point upon which it can rely.

3. Section 2.02(2) of the Model Penal Code defines each level of culpability as the following:

**(a) Purposely.**

A person acts purposely with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

**(b) Knowingly.**

A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

**(c) Recklessly.**

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. · The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

**(d) Negligently.**

A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

be the minimum required showing under § 261.7(a). The fact that the 1977 Amendment to the Act removed the word "willful" and added "placing and allowing" does not dispense with a mens rea requirement altogether, but it does serve to indicate that the drafters intended some lowering of the standard. Under these circumstances, it would be inappropriate to set the mens rea hurdle at "purposely." Particularly helpful in deciding which of the remaining three levels of culpability should be adopted is the Model Penal Code's interpretation of "willful." Section 2.02(8) of the Model Penal Code states that "[a] requirement that an offense be committed *wilfully is satisfied if a person acts knowingly* with respect to the material elements of the offense, unless a purpose to impose further requirements appears." (Emphasis added). Because it is true that wilfully and knowingly are often used interchangeably, it would not make sense to adopt a knowingly standard in lieu of the elimination of its equivalent in the 1977 Amendment.

Of the remaining two levels, this Court finds that recklessness better fits the regulation in question and should be the minimum required showing in order to convict under § 261.7(a). While it is true there is no clear rationale in the regulation or legislative history which would indicate that recklessness, as opposed to negligence, should be the appropriate standard, this Court makes such ruling based, in part, upon the long held notion that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971). Accordingly, the defendant may be convicted of a violation of § 261.7(a) only if the Government proves beyond a reasonable doubt that he recklessly, knowingly, or purposely *allowed* his livestock to be on Forest Service property.

### CONCLUSION

The Magistrate Judge's decision is REVERSED. The Court recognizes defendant's withdrawal of his conditional plea of guilty. The Court renders no opinion regarding defendant's appeal of his sentence because defendant is no longer pleading guilty to the alleged violations of 36 C.F.R. § 261.7(a). The case is REMANDED to the magistrate judge for proceedings in accordance with this opinion.