**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William Nelson DAVIS, Defendant–Appellant.**

**No. 02–50451.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 2003.

Filed July 17, 2003.

Carol C. Lam, United States Attorney, Christopher P. Tenorio, Assistant United States Attorney, San Diego, CA, for the plaintiff-appellee.

Todd W. Burns, Federal Defenders of San Diego, Inc., San Diego, CA, for the defendant-appellant.

Before THOMPSON, TROTT, and TALLMAN, Circuit Judges.

## OPINION

TROTT, Circuit Judge:

William Nelson Davis ("Davis") appeals his conviction and sentence for escape, in violation of 18 U.S.C. § 751(a). We have jurisdiction pursuant to 28 U.S.C. § 1291. Davis argues that the district court erred in denying his motion to dismiss the indictment for failure adequately to allege criminal intent. Because the indictment sufficiently tracked the language of § 751(a), and because the term "escape" as used in the indictment unambiguously set forth the proper criminal intent, we affirm.

## BACKGROUND

Davis was convicted for bringing into the United States an illegal alien without presentation, a violation of 8 U.S.C. § 1324(a)(2)(B)(iii). He was sentenced to twelve months and one day in prison, with two years subsequent supervised release. Pursuant to his conviction, he was lodged in the Pacific Furlough Facility in San Diego, California, but on November 2, 2001, he was found to be missing. An investigation and a search of the facility indicated that Davis had left the facility without authorization. On December 19, 2001, an indictment issued charging Davis with escape, in violation of 18 U.S.C. § 751(a). The indictment alleged:

On or about November 2, 2001, within the Southern District of California, defendant WILLIAM NELSON DAVIS did escape from an institution and facility in which he was confined by direction of the Attorney General, to wit, Pacific Furlough Facility, Community Corrections Center in San Diego, California, said custody and confinement being by virtue of a conviction of Bringing in Illegal Aliens for Financial Gain, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii), Aiding and Abetting, in violation of Title 18, United States Code, Section 2, and Bringing in Illegal Aliens without Presentation, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii); all in violation

of Title 18, United States Code, Section 751(a).

Davis was taken back into custody on May 30, 2002, when he attempted entry into the United States from Mexico at the San Ysidro Port of Entry. Davis subsequently filed a pre-trial motion asking the district court to dismiss the indictment for failure to allege any criminal intent. The district court denied Davis's motion, and the case was eventually tried before the court. Davis was convicted and sentenced to four months of additional imprisonment.

## DISCUSSION

 We review the sufficiency of a timely challenged indictment de novo. *United States v. Pernillo–Fuentes*, 252 F.3d 1030, 1032 (9th Cir.2001). We may affirm the district court on any basis supported by the record. *United States v. Kaluna*, 192 F.3d 1188, 1196 n. 2 (9th Cir.1999).

 An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Bailey*, 444 U.S. 394, 414, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (quotation marks omitted). In cases where the indictment "tracks the words of the statute charging the offense," the indictment will be held sufficient "so long as the words unambiguously set forth all elements necessary to constitute the offense." *United States v. Fitzgerald*, 882 F.2d 397, 399 (9th Cir. 1989) (quotation marks omitted).

A comparison of Davis's indictment to the charging statute shows that the indictment plainly "tracks the words of the statute," which provides in pertinent part:

> Whoever escapes or attempts to escape from ... any institution or facility in which he is confined by direction of the Attorney General, ... shall, if the custody or confinement is by virtue of ... conviction of any offense, be fined under this title or imprisoned not more than five years, or both. . . .

18 U.S.C. § 751(a). Thus, Davis's indictment is sufficient if its words "unambiguously set forth all the elements" of escape under § 751(a). *Fitzgerald*, 882 F.2d at 399. Because Davis argues only that the indictment is insufficient because it lacks any allegation of intent, we assume all the other elements are sufficiently alleged, and we consider only whether the indictment was deficient on that ground.

While § 751 does not explicitly articulate an element of intent in connection with the prohibited act of escaping, the Supreme Court held in *Bailey* that intent is an implied element of the offense. 444 U.S. at 406 & n. 6, 100 S.Ct. 624. The Court rejected, however, the notion that the government must prove the escapee "acted with the purpose—that is, the conscious objective—of leaving the jail without authorization." *Id.* at 408, 100 S.Ct. 624. Holding that "such a heightened standard of culpability" is not required, the Court declared that "the prosecution fulfills its burden under § 751(a) if it demonstrates that an escapee knew his actions would result in his leaving physical confinement without permission." *Id.* Accordingly, to be sufficient Davis's indictment must have "unambiguously set forth" that Davis "knew his actions would result in his

leaving physical confinement without permission." [1]

There is no dispute that the indictment does not contain a specific verbal elaboration of criminal intent. This, however, is not fatal to the indictment so long as the requisite intent is unambiguously found in the words of the indictment. *See United States v. Ross,* 206 F.3d 896, 899–900 (9th Cir.2000). In *Ross,* we held that the word "embezzled" sufficiently alleged the criminal intent required under 18 U.S.C. § 1711, because the word "connotes to both lawyers and laymen that the act was performed with *wrongful intent." Id.* (emphasis added and quotation marks omitted). Although we reviewed the indictment in *Ross* only for "plain error," *id.* at 899, the reasoning we employed is not limited to "plain error" cases. *See United States v. Morrison,* 536 F.2d 286, 289 (9th Cir.1976) (applying the same reasoning while conducting a de novo review). While we ultimately determined in *Morrison* that the term "convert" did not sufficiently allege criminal intent, we did so because "convert" can allege a civil tort as well as a criminal act, not because we applied a de novo review. *Id.*

We understand the word "escape" to be like the word "embezzled" in that it connotes "wrongful intent." *Ross,* 206 F.3d at 899. This understanding of "escape" is common "to both lawyers and laymen." *Id.* For lawyers, *Black's* dictionary defines "escape" as "the voluntary departure from lawful custody by a prisoner with the in-

tent to evade the due course of justice." *Black's Law Dictionary* 544 (6th ed.1990). We recently employed the same definition in *United States v. Novak,* 284 F.3d 986, 989 (9th Cir.) (quoting *Black's* ), *cert. denied,* 537 U.S. 854, 123 S.Ct. 211, 154 L.Ed.2d 89 (2002). For laymen, *Webster's* dictionary similarly defines the term "escape" as "to get away (as by flight or conscious effort)." *Webster's Third New International Dictionary* 774 (Merriam–Webster, Inc.1993). Indeed, *Webster's* uses the phrase, "the prisoner *escaped* from prison," as an example of the word's meaning and use. *Id.*

Our understanding of the word "escape" is not taken in a vacuum. We readily recognize that the word "escape" can convey non-criminal meanings when used in certain contexts, such as "the student tried to 'escape' boredom." We must, however, read Davis's indictment "in its entirety," and construe it "in accord with common sense and practicality." *United States v. Alber,* 56 F.3d 1106, 1111 (9th Cir.1995). The indictment alleged that Davis "did escape" from a correctional facility where he was "confined ... by virtue of a conviction" of violating federal law. The word "escape" in this context is subject only to the meanings quoted *supra* that convey a "wrongful intent." In this regard, "escape" is dissimilar from the word "convert" we considered and found wanting in *Morrison.* The indictment in *Morrison*

---

**1.** The parties spent much of their briefs disputing whether escape is a specific or general intent crime. We see no benefit in labeling the intent defined in *Bailey* as either general or specific because such a determination is unnecessary to our ultimate determination in this case whether that intent was "unambiguously set forth." *Fitzgerald,* 882 F.2d at 399. Contrary to Davis's argument, our decision in *United States v. Felix–Jerez,* 667 F.2d 1297 (9th Cir.1982), does not establish that § 751(a) is a specific intent crime. Rather,

our decision reflected the reality of that case where the jury was instructed, without objection from the government, that specific intent was an element of the offense. *Id.* at 1303; *see also United States v. Taylor,* 933 F.2d 307, 310 (5th Cir.1991) (Specific intent became an element of § 751(a) because the escapee was "indicted for willfully escaping federal custody, and the district court instructed the jury, without objection, that specific intent was an element of the crime.").

alleged that the defendant " 'did convert * * * without authorization by law.' " 536 F.2d 289. Even in this context, the term "convert" could be understood to allege a civil tort. In contrast, the word "escape" used in the context of Davis's indictment has no similar double meaning.

We hold that the term "escape," as used in the indictment, carried with it an allegation that the escapee acted with the knowledge that he was leaving lawful custody without permission. Moreover, the language of the indictment adequately will enable him "to plead an acquittal or conviction in bar of future prosecutions." *Bailey*, 444 U.S. at 414, 100 S.Ct. 624. Accordingly, the indictment's allegation that Davis "did escape" was sufficient to "unambiguously set forth" the necessary criminal intent for a violation of § 751(a).

## CONCLUSION

Because Davis's indictment for escape tracked the language of § 751(a) and the allegation that Davis "did escape" "unambiguously set forth" the criminal intent prescribed in *Bailey*, the district court correctly denied Davis's motion to dismiss the indictment for failure to allege the requisite intent.

AFFIRMED.