**UNITED STATES of America, Appellee,**

v.

**Mark ESPOSITO, Appellant.**

**No. 84–5090.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 2, 1984.

Decided Feb. 8, 1985.

**522**

C. David Gantt, Asheville, N.C., for appellant.

Jerry W. Miller, Asst. U.S. Atty., Asheville, N.C. (Charles R. Brewer, U.S. Atty., Asheville, N.C., David A. Sawyer, Paralegal Specialist on brief), for appellee.

Before MURNAGHAN and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge.

■ Mark Esposito was convicted of conducting unauthorized work activity on federal lands in violation of 36 C.F.R. § 261.-10(c). He appeals, arguing that his conduct was not proscribed by this regulation or, in the alternative, that his actions were justified. We reverse because § 261.10(c) is not applicable to a holdover tenant, who is prosecuted for conduct that is related to the issues of a pending appeal pursuant to the Uniform Relocation Assistance Act, 42 U.S.C. § 4621–4637.

On April 1, 1982, the federal government acquired an option to purchase a tract of land known as Max Patch for relocation of the Appalachian Trail through the Pisgah National Forest in North Carolina. The government exercised its option and took title and possession of the land in September 1982.

For the previous five years, Mark Esposito, a state highway department employee, had lived on the tract as a tenant at will. He occupied a dwelling, planted a garden, and kept several horses in a nearby stable. In return, he looked after the property for the owner.

In May 1982, Esposito purchased 4,000 Scotch pine seedlings and put them in a planting bed about 30' x 30', intending to transplant and grow them for Christmas trees. Soon after he purchased the trees, the government notified him of the option that it had obtained, gave him notice to vacate, and informed him of his rights under the Uniform Relocation Assistance Act.

After the government took title, its local officials notified Esposito that the government would not pay him for the trees or grant him permission to transplant them on the tract. They explained that they planned to keep the tract open as a mountain "bald." The government, however, offered to move the trees if Esposito could locate a suitable place to plant them. Esposito obtained estimates from two nurseries for this solution to the controversy, but the government rejected them as too expensive. Government estimates for "heeling" the seedlings at a site to be provided by Esposito also failed to lead to a settlement for reasons not fully developed in the record.

In December 1982, Esposito filed an action to enforce his rights under the Relocation Act. The district court dismissed his complaint because he had not exhausted all administrative remedies. Esposito then pursued his administrative remedies, appealing the adverse decisions of local officials through the regional office to the Chief of the Forest Service of the Department of Agriculture.

In the meantime, during March and April, concerned that the seedlings would be deformed if they remained in the planting bed, Esposito cleared an area of briars and weeds estimated to be between one and two acres and transplanted 100 seedlings. When this came to the attention of the local forester, he charged Esposito with conducting unauthorized work activity on government land. The complaint, which was filed May 3, 1983, recited that Esposito admitted transplanting the seedlings. It concluded: "Mr. Esposito stated that his acts were in furtherance of an appeal to allow him to farm this area. Mr. Esposito stated that he was just trying to save the taxpayers money as his seedlings were getting too big for the bed."

The material facts of the trial conducted by the district court without a jury are not in conflict. The prosecutor proved that Esposito transplanted 100 seedlings from

the planting bed without consent. Esposito admitted that he transplanted 100 seedlings and explained, as he had to the local official, that he acted to preserve the seedlings while his appeal pursuant to the Relocation Act for permission to grow them was pending. The advisability of moving the seedlings from the planting bed to preserve them was corroborated by a regional official of the forest service.

The evidence also disclosed that on June 17, 1983, more than a month after the complaint against Esposito was filed, the Chief of the Forest Service, to whom Esposito had appealed, affirmed the allowance made by a regional officer for Esposito's replacement housing but deferred ruling on the trees. The Chief of the Forest Service stated: "You have not been completely relocated. We understand the situation with your livestock and Christmas trees will be addressed as a separate issue from your claim for replacement housing benefits."

Section 261.10(c) of 36 C.F.R. prohibits in federal forests: "Selling or offering for sale any merchandise, conducting any kind of work activity or service unless authorized by Federal law, regulation, or permit."

The district court held that Esposito conducted work activity when he transplanted 100 seedlings from the planting bed in the federal forest to another area of the forest. The court also held that because Esposito had not obtained consent to transplant the trees he violated the regulation. The court imposed a six-months suspended sentence and probation for one year conditioned upon payment of a $500 fine.

Esposito was a holdover tenant. His dwelling had been relocated with the government's assistance, but his seedlings, which the government recognized were his property, remained on the land. The Chief of the Forest Service acknowledged in his June 17, 1983, ruling that Esposito had not been fully relocated and his claim for relocation assistance with respect to the seedlings had not yet been resolved.

This appears to be a case of first impression. Both parties acknowledge that they have been unable to find any precedent for prosecuting a holdover tenant for performing work on land formerly a part of his tenancy while he was pursuing administrative remedies authorized by the Relocation Act. This is not to say that the government has no remedies against a tenant who fails to quit the premises after the government has acquired the land which was the subject of his tenancy. We may take judicial notice that previously the government has instituted civil actions of ejectment instead of resorting to criminal prosecution.[1]

It is not surprising that this criminal prosecution lacks precedent, for it is contrary to the congressional policy enunciated in the Uniform Relocation Assistance Act. The Act declares at 42 U.S.C. § 4621:

> The purpose of this subchapter is to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of Federal and federally assisted programs in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole.

Regulations implementing the Act provide that claims made under the Act shall be adjudicated in accordance with the regulations then in effect. 7 C.F.R. § 21.102. Section 21.105 of 7 C.F.R. authorizes the head of an agency to permit a former tenant to use or lease the property. It was this permission which Esposito consistently sought, and if permission were ultimately denied he wanted adequate relocation assistance for the trees.

The denial of Esposito's claims at the local and regional levels was not conclusive. Section 21.104 of the regulations allowed him to appeal to the Secretary of Agriculture or his designee. Esposito had timely appealed. When he was charged, his appeal was pending before the Secretary's designee, the Chief of the Forest

---

1. *See, e.g., United States v. Yachts America, Inc.,* 745 F.2d 52 (4th Cir.1984) (unpublished) (affirming judgment of ejectment notwithstanding pendency of tenants' claims for compensation in other courts.)

Service, who could have granted him the permission that he sought.

The evidence discloses that Esposito believed that he had a bona fide claim under the Relocation Act. He satisfied the definition of a tenant set forth in § 21.226 of the regulations, and the government recognized that he was entitled to whatever benefits were his due under the Act. It is not disputed that it was reasonable for Esposito to start transplanting seedlings from the planting bed to some other location in order to preserve them. Also, the evidence supports his claim that transplanting them would mitigate his loss if eventually he were granted permission to use or lease the property in accordance with the regulations implementing the Relocation Act.

The regulation under which Esposito was prosecuted and the Relocation Act with its implementing regulations relate in this instance to the same subject, the means by which the government can enforce its possessory rights against a holdover tenant. Literally construed, without regard to the object to be achieved, the regulation proscribing work activity would seem to authorize the government to prosecute the tenant. But literal construction, in this instance, runs afoul of the following principles:

> [T]his mode of expounding a statute has never been adopted by any enlightened tribunal—because it is evident that in many cases it would defeat the object which the Legislature intended to accomplish. And it is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature, as thus ascertained, according to its true intent and meaning.[2]

Application of these principles persuade us that literal construction of the criminal regulation is inappropriate when a holdover tenant is involved.

Prosecution of a holdover tenant for using land that was part of his former tenancy to preserve his crop and mitigate his damages, while his request for permission to use the property is pending administratively, is antithetical to the congressional declaration of policy in the Relocation Act. The Act and implementing regulations evince an intent to adjudicate controversies over relocation assistance to tenants administratively or by other appropriate civil proceedings.

■ The conclusion that civil rather than criminal proceedings are appropriate to adjudicate disputes between holdover tenants and the government is supported by general law. Historically a landlord's remedies against a holdover tenant have been to bring a summary action of unlawful detainer or ejectment to recover the premises and damages. *See* 1 American Law of Property § 3.36 (A. Casner ed. 1974). Congress is content to rely on these common law remedies. Although many federal agencies are landlords, Congress has enacted no criminal penalties against holdover tenants whose rights are determined by the Relocation Act.

We conclude therefore that Esposito should not have been prosecuted under 36 C.F.R. § 261.10(c). His claims against the government and the government's complaints against him should be adjudicated in appropriate administrative and civil proceedings.

The judgment of the district court is reversed.

---

**2.** *Brown v. Duchesne,* 60 U.S. (19 How.) 183, 194, 15 L.Ed. 595 (1857). *See also Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974); *Hollenbeck v. Penn Mutual Ins. Co.,* 323 F.2d 566, 571 (4th Cir.1963).