**UNITED STATES of America, Plaintiff,**

v.

**Lavon R. KENT, Defendant.**

**Cr. No. S-86-172 MLS.**

United States District Court,
E.D. California.

Sept. 4, 1987.

Thomas J. Hopkins, Asst. U.S. Atty., Sacramento, Cal., for plaintiff.

Larry Barlly, Asst. Federal Defender, Sacramento, Cal., for defendant.

MEMORANDUM OF DECISION

MILTON L. SCHWARTZ, District Judge.

Defendant is charged with unauthorized residential occupancy of National Forest System lands, which is a violation of 16 U.S.C. § 551 and a regulation promulgated thereunder, 36 C.F.R. § 261.10(b).[1] A person charged with such an offense may be tried and sentenced in the same manner and subject to the same conditions as provided for in 18 U.S.C. § 3401(b) through (e). *See* 16 U.S.C. § 551. Under section 3401(b), the person charged with such an offense may elect to be tried before a magistrate or a judge. Defendant in this case elected to be tried before a judge.

Trial commenced on July 27, 1987. The court heard oral argument and the matter was submitted on a stipulated set of facts, filed shortly before trial on July 20.[2] The following constitutes the court's decision and findings. *See* Fed.R.Crim.P. 23(c).

STANDARD

Section 551 of Title 16 of the United States Code provides:

> The Secretary of Agriculture shall make provisions for the protection against destruction by fire and depreda-

---

1. Defendant was also charged with water pollution (a violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.11(c)) and failure to remove garbage and rubbish (a violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.11(d)) in a separate action, Cr. S-86-186 MLS. By order dated July 27, 1987 the court granted the government's motion to dismiss these charges with prejudice.

2. The Statement of Stipulated Facts is attached as Appendix A.

tions upon the public forests and national forests which may have been set aside or which may be hereafter set aside under the provisions of section 471 of this title, and which may be continued; and he may make such rules and regulations and establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction; and any violation of the provisions of this section, sections 473 to 478 and 479 to 482 of this title or such rules and regulations shall be punished by a fine of not more than $500 or imprisonment for not more than six months, or both. Any person charged with the violation of such rules and regulations may be tried and sentenced by any United States magistrate specially designated for that purpose by the court by which he was appointed, in the same manner and subject to the same conditions as provided for in section 3401(b) to (e) of Title 18.

Pursuant to this section, the secretary adopted the regulations found at 36 C.F.R. § 261.1 *et seq.* Section 261.10(b) of these regulations prohibits "taking possession of, occupying, or otherwise using National Forest System lands for residential purposes without a special-use authorization, or as otherwise authorized by Federal law or regulation." 36 C.F.R. § 261.10(b).

ANALYSIS

Defendant admits in the stipulated facts that she has occupied the land in question—an area known as Sandy Bar Creek—since 1984 and that this land is part of the Klamath National Forest. She also concedes that she has no special use permit. Defendant argues, however, that she has an aboriginal right as an Indian to occupy the land, relying primarily on *Cramer v. United States,* 261 U.S. 219, 43 S.Ct. 342, 67 L.Ed. 622 (1923).

At issue in *Cramer* was the validity of a land patent issued in 1904 to the Central Pacific Railway Company. *Id.* at 224, 43 S.Ct. at 343. In 1866, Congress granted to the railway company's predecessor a series of parcels of land, excepting, however,

such lands as "shall be found to have been granted, sold, reserved, occupied by homestead settlers, pre-empted or otherwise disposed of." *Id.* at 225, 43 S.Ct. at 343 (quoting the "Act of July 25, 1866, 14 Stat. 239, c. 242"). The conditions of the grant were complied with, resulting in the subsequent issuance of the land patent.

The United States, acting on behalf of three Indians, sued to cancel the patent insofar as it purported to convey land occupied continuously by the Indians since before 1859. *Id.* at 224–25, 43 S.Ct. at 343. The Supreme Court held in favor of the government and the Indians, finding that the patent should be cancelled with respect to those lands actually occupied by the Indians. *Id.* at 236, 43 S.Ct. at 347. The Court concluded that these lands fell within the grant's exception for lands which were "reserved ... or otherwise disposed of." *Id.* at 227, 43 S.Ct. at 344.

The Court reasoned as follows:
Unquestionably it has been the policy of the federal government from the beginning to respect the Indian right of occupancy, which could only be interfered with or determined by the United States. [Citations omitted.] It is true that this policy has had in view the original nomadic tribal occupancy, but it is likewise true that in its essential spirit it applies to individual Indian occupancy as well; and the reasons for maintaining it in the latter case would seem to be no less cogent, since such occupancy being of a fixed character lends support to another well understood policy, namely, that of inducing the Indian to forsake his wandering habits and adopt those of civilized life. That such individual occupancy is entitled to protection finds strong support in various rulings of the Interior Department, to which in land matters this court has always given much weight.
*Id.* at 227, 43 S.Ct. at 344. The Court went on to observe:
The action of these individual Indians in abandoning their nomadic habits and attaching themselves to a definite locality, reclaiming, cultivating, and improving the soil and establishing fixed homes

thereon, was in harmony with the well-understood desire of the government which we have mentioned. To hold that by so doing they acquired no possessory rights to which the government would accord protection would be contrary to the whole spirit of the traditional American policy toward these dependent wards of the nation.

The fact that such right of occupancy finds no recognition in any statute or other formal governmental action is not conclusive. The right, under the circumstances here disclosed, flows from a settled governmental policy.

*Id.* at 228–29, 43 S.Ct. at 344. The Court then concluded:

In our opinion the possession of the property in question by these Indians was within the policy and with the implied consent of the government. That possession was definite and substantial in character and open to observation when the railroad grant was made, and we have no doubt falls within the clause of the grant excepting from its operation lands "reserved * * * or otherwise disposed of."

*Id.* at 230, 43 S.Ct. at 345.

It should be noted at the outset that *Cramer* involved a determination of property rights between the Indians and private grantees—not between Indians and the government. The Court specifically recognized at the beginning of its analysis that the Indians' right of occupancy could be determined and/or interfered with by the United States government. *See id.* at 227, 43 S.Ct. at 344. In this case, any right to occupy the land possessed by defendant and her ancestors was arguably extinguished by any of a number of events: (1) their failure to make timely claims to the land under the California Land Claims Act of 1851, 9 Stat. 631 (1851), *see Super v. Work,* 3 F.2d 90, 90–91 (D.C.Cir.1925), *aff'd,* 271 U.S. 643, 46 S.Ct. 481, 70 L.Ed. 1128 (1926); *see also Donahue v. Butz,* 363 F.Supp. 1316, 1323 (N.D.Cal.1973); (2) the

designation of the land in question as the Klamath National Forest, *see Ute Indian Tribe v. Utah,* 716 F.2d 1298, 1313–14 (10th Cir.1983); *United States v. Pueblo of San Ildefonso,* 513 F.2d 1383, 1386, 1391–92 (Ct.Cl.1975); *see also United States v. Gemmill,* 535 F.2d 1145, 1149 (9th Cir.), *cert. denied,* 429 U.S. 982, 97 S.Ct. 496, 50 L.Ed.2d 591 (1976); and (3) the payment of compensation to defendant's tribe (the Karuks) for the loss of their land, *see Gemmill,* 535 F.2d at 1149.

Even if these actions did not extinguish any right defendant may have as an individual (as opposed to as a Karuk) to occupy a particular parcel of land, this case is still distinguishable from *Cramer.* In *Cramer,* the Indians had lived on the same 175 acre parcel with their parents for over sixty years. 261 U.S. at 226, 43 S.Ct. at 343. The 175 acres had been enclosed by fencing, improved with various permanent structures and cultivated. *Id.*

In this case, defendant has only lived at Sandy Bar Creek since February of 1984. Her great grandmother lived on the land until her death in 1870; however, from 1870 to 1984 no blood relative of defendant lived on the land in question.[3] Moreover, even though defendant lives in a trailer on the site and has planted a garden, she has not enclosed the area she claims with fencing or erected permanent structures. Thus both the degree and duration of the occupancy in this case is much less than in *Cramer.*

For these reasons, the court concludes that defendant does not possess an aboriginal right—through either her heritage as a Karuk Indian or her occupancy of the site in question—to use land in the Klamath National Forest for residential purposes. Because of this, her occupancy is unlawful.

CONCLUSION

The court, therefore, finds defendant GUILTY of violating 36 C.F.R. § 261.10(b)

---

**3.** The court notes that the Ninth Circuit in *Gemmill* implied that a voluntary abandonment may also extinguish title. *See* 535 F.2d at 1148.

and 16 U.S.C. § 551. Sentencing is set for Thursday, November 5, 1987 at 9:00 a.m.[4]

APPENDIX A

STATEMENT OF STIPULATED FACTS

It is hereby stipulated by all parties to the above-entitled action that the Court, being the trier of fact, consider the following facts as true in lieu of the presentation of evidence and in addition to the pleadings and records of the case:

1. That LAVON R. KENT, defendant herein, is and was at all times relevant to this action, a member of the Karuk Indian Tribe.

2. The Karuk Tribe is a federally recognized indian tribe.

3. That said tribe was entitled to, and in fact monies were set aside for the takings of its lands by the government of the United States. As a result of such action and other acts by the United States, the Karuk Indians' aboriginal title to area involved in this litigation was extinguished.

4. That although the tribe retains no title to Sandy Bar Creek, (which is the area in dispute), the Karuk Indians have, both past and present, each and every year since time immemorial, traveled from the area of Happy Camp to Somes Bar and points in between for the purpose of participation in the traditional ceremony of the Karuk called "Pikiyowish" (World Renewal Ceremony).

5. That Sandy Bar Creek intersects the traveled route of the Karuks on their way to the Pikiyowish Ceremony, and in particular, the area in which is alleged KENT resides is immediately adjacent to the road upon which the Karuks now travel on their way to the ceremony.

6. That KENT does, in fact, reside at Sandy Bar Creek. She moved onto the site on or about February, 1984 and has resided, possessed and occupied Sandy Bar Creek since that date. She has placed a trailer on the site which she has made into her living quarters and has planted a garden which yields food for her sustenance and exercises her power to exclude others from the area.

7. That KENT'S relatives have previously resided, possessed and occupied Sandy Bar Creek and its surrounding area. Aggie Henry Jacobs, LAVON KENT'S great-grandmother, continuously lived at, and in the area, of Sandy Bar Creek until her death in 1870. (See attached Exhibit A).

That from approximately 1870 to 1984 no blood relative of LAVON KENT lived at Sandy Bar Creek. However, other relatives lived just west of Sandy Bar Creek. These relatives include George and Dan Charlie who received indian allotments just west of Sandy Bar Creek. The area just west of Sandy Bar Creek remains designated as private property.

8. That no allotment was made of Sandy Bar Creek to designate it as private property.

9. That Sandy Bar Creek is within the boundaries of the Klamath National Forest.

10. That the Forest Service, which has jurisdiction over the Klamath National Forest, has not issued a special use authorization to LAVON KENT pursuant to Title 36, Code of Federal Regulations, Section 261.-1a.

11. That the Forest Service has issued a violation notice resulting in the Information now pending before the Court.

DATED: July 16, 1987

(s) Lavon R. Kent
LAVON R. KENT
Defendant

---

**4.** The court notes that defendant has filed a "waiver of presence" pursuant to Rule 43(c)(2) of the Rules of Criminal Procedure.

DATED: July 14, 1987

    (s) <u>Larry Barlly</u>
    LARRY BARLLY
    Assistant Federal Defender

DATED: July 20, 1987

    (s) <u>Thomas J. Hopkins</u>
    THOMAS J. HOPKINS
    Assistant United
    States Attorney

EXHIBIT A

Family TREE, LAVON KENT

BLOOD AND OTHER RELATIONS