UNITED STATES of America, Plaintiff–Appellee,

v.

**Lavon R. KENT, Defendant–Appellant.**

No. 88–1088.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 16, 1988.

Original Opinion Filed Aug. 1, 1990.

Opinion Vacated and Withdrawn Sept. 27, 1991.

Opinion on Rehearing Filed Sept. 27, 1991.

---

Thomas J. Hopkins, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Abby Abinanti, San Francisco, Cal., for defendant-appellant.

Before PREGERSON, CANBY and BEEZER, Circuit Judges.

## ORDER

The petition of the United States for rehearing is GRANTED. Our prior decision in this case, *United States v. Kent*, 912 F.2d 277 (9th Cir.1990), is vacated and the opinion is withdrawn. The matter is submitted on rehearing upon the briefs and record previously filed, and on the petition for rehearing and response thereto. The following opinion, issued upon rehearing, now represents the opinion and decision of this court.

PREGERSON, Circuit Judge, dissents from this order; he would deny the petition for rehearing.

## OPINION

CANBY, Circuit Judge:

Lavon R. Kent, a Karuk Indian, appeals her conviction after a bench trial for unauthorized residential occupancy of land in a national forest. Kent contends that the district court erred in holding that she had no individual aboriginal rights to occupy the land in question. She also contends, for the first time on appeal, that she was entitled to occupy the land because the Department of the Interior had issued her a certificate of eligibility for an allotment in a national forest and because the relevant statute contemplated that an Indian would occupy the land before actually applying for an allotment. We affirm.

## BACKGROUND

This case was submitted to the district court on stipulated facts. Kent is a member of the federally recognized Karuk Indian Tribe, for whom no reservation has been set aside. Any *tribal* aboriginal title that

the Karuks possessed in the area involved here has been extinguished; Congress has set aside compensation for the Tribe for the taking of its lands.

Kent moved onto a site at Sandy Bar Creek within the Klamath National Forest in February 1984, and has occupied and possessed that site since then. She has placed a trailer on the site, which she uses as her living quarters, and has planted a garden, which yields food for her sustenance. Kent excludes others from the site.

The United States Forest Service has not issued a special-use authorization to Kent. Nor has the Forest Service granted Kent or anyone else an allotment of land on this site. Kent, however, applied for and on July 18, 1982, received a certificate of eligibility from the Department of the Interior which certifies that she is a California Indian who is eligible to obtain an allotment of land on the public domain or in a national forest.

Kent's great-grandmother lived at Sandy Bar Creek continuously until her death in 1870. From approximately 1870 to 1984, no blood relative of Kent lived at this site on Sandy Bar Creek. Kent's mother was born one mile from Sandy Bar Creek and lived there until 1939. Relatives of Kent have allotments just west of Sandy Bar Creek. Every year "since time immemorial" Karuk Indians have traveled along a road immediately adjacent to where Kent resides on Sandy Bar Creek to participate in the Karuk ceremony of Pikiyowish (World Renewal).

On September 4, 1987, the district court found Kent guilty of unauthorized residential occupancy of national forest land, in violation of 16 U.S.C. § 551 (1985) and 36 C.F.R. § 261.10(b) (1988).[1] *United States*

v. *Kent,* 679 F.Supp. 985 (E.D.Cal.1987). The district court subsequently sentenced Kent to a thirty-day jail term and ordered her to pay a $25 penalty assessment. The district court stayed its sentence pending Kent's appeal of the judgment of conviction. On August 1, 1990, we issued a decision reversing the district court. *United States v. Kent,* 912 F.2d 277 (9th Cir.1990). We have today granted the government's petition for rehearing, and vacated our earlier decision. We now affirm the district court's judgment of conviction.

## DISCUSSION

### I. *Individual Aboriginal Title*

At trial, Kent defended her occupancy of this parcel of land as protected by individual aboriginal title. On appeal, Kent argues that the district court erred because its holding was based solely on the extinguishment of Kent's *tribal* aboriginal rights, and failed to consider her claim of *individual* aboriginal right to this parcel of land. Kent relies on the Supreme Court's decision in *Cramer v. United States,* 261 U.S. 219, 43 S.Ct. 342, 67 L.Ed. 622 (1923), to support her claim to individual aboriginal title. We reject her contention.

The district court clearly addressed and ruled on Kent's claims to individual aboriginal title to this parcel of land. After reciting a number of actions which extinguished Karuk tribal title, the district court went on to hold that "[e]ven if these actions did not extinguish any right defendant may have *as an individual* (as opposed to as a Karuk) to occupy a particular parcel of land, this case is still distinguishable from *Cramer.*" *Kent,* 679 F.Supp. at 987 (emphasis added).[2]

More important, the district court properly distinguished Kent's individual ab-

---

**1.** 16 U.S.C. § 551 requires the Secretary of Agriculture to regulate the occupancy and use of national forests, and further provides that violation of the Secretary's regulations shall be punished by a fine of not more than $500 or imprisonment for not more than six months, or both.

 36 C.F.R. § 261.10(b) states: The following are prohibited:
 . . . .
 (b) Taking possession of, occupying, or otherwise using National Forest System lands for

residential purposes without a special-use authorization, or as otherwise authorized by Federal law or regulation.

**2.** The district court's final conclusion further confirms that its ruling rejected claims to individual title: "For these reasons, the court concludes that defendant does not possess an aboriginal right—through either her heritage as a Karuk Indian *or her occupancy of the site* in question—to use land in Klamath National For-

original title claim from those upheld in *Cramer*. As the district court stated, "[i]n *Cramer*, the Indians had lived on the same 175 acre parcel with their parents for over sixty years." *Id.* Kent, by contrast, has occupied this parcel since 1984. After the parties briefed and argued this appeal, this court applied *Cramer* to another claim of individual aboriginal title, in *United States v. Dann*, 873 F.2d 1189 (9th Cir.), *cert. denied*, 493 U.S. 890, 110 S.Ct. 234, 107 L.Ed.2d 185 (1989). In *Dann*, we held that such title can be established, under *Cramer*, when an Indian can show that she or her lineal ancestors continuously occupied a parcel of land, *as individuals,* and that the period of continuous occupancy commenced before the land in question was withdrawn from entry for purposes of settlement. *Dann*, 873 F.2d at 1198–99.

■ Kent's claim fails to meet the requirements established in *Dann*. She began her occupancy of this parcel of land in 1984, long after her tribe's title to the land had been extinguished, and long after the land had been established as a National Forest,[3] closed to public entry and settlement. No lineal ancestors immediately preceded her in occupancy. We are acutely aware of, and respect, the strong attachment that Kent has by virtue of family, culture and tradition to this parcel of land on Sandy Bar Creek. *Cramer*, however, permits us to protect such ties in the form of legal title only for those Indians who have *maintained* a presence on that land. We cannot, under *Cramer* and *Dann*, find

such title in all Indians who attempt *to return* to their ancestral lands.

Kent argues for a different application of the rule in *Cramer* because, she asserts, the Forest was not closed *to her* because of the Forest Allotment Act and her certificate of eligibility for such an allotment, which she obtained in 1981.[4] We question that her certificate, which refers to no specific site, confers upon Kent a right of entry to this particular parcel of land. We need not decide that question, however, nor need we decide whether her certificate could create an exception to the rule that continuous occupancy must begin before the Forest was closed to *public* entry and settlement. *Dann*, 873 F.2d at 1197–98. Kent never raised any argument based on her certificate in the district court. For reasons explained immediately below, we decline to entertain this argument, raised for the first time on appeal.

*II. Kent's Right to an Allotment*

Kent argues that she cannot be guilty of unlawful occupancy of forest land because her occupancy was "otherwise authorized by Federal law or regulation." 36 C.F.R. § 261.10(b). The authorization, she argues, is contained in her certificate of eligibility for an allotment pursuant to the Forest Allotment Act of 1910, 25 U.S.C. § 337. Because that Act permits the Secretary of Agriculture, "in his discretion," to make allotments of national forest land to eligible Indians "occupying" the land, Kent argues that she is entitled to establish a residence at a location of her choice, and then to apply for an allotment.

---

est for residential purposes." *Kent*, 679 F.Supp. at 987 (emphasis added).

**3.** President Theodore Roosevelt created the Klamath National Forest by a proclamation issued on May 6, 1905, 34 Stat. 3001 (1905). In 1910, congress passed the Forest Allotment Act, which established a procedure by which eligible Indians could apply to receive an allotment of land within the National Forests. 25 U.S.C. § 337. Forests were generally open to settlement from 1906 to 1962 under the Forest Homestead Act of 1906 (34 Stat. 233), the Secretary of Agriculture being instructed to designate appropriate lands for settlement when they were deemed better suited to agriculture than forestry. Indians who entered the Forests seeking allotments were treated as persons seeking homesteads under the Forest Homestead Act. Since that Act was

repealed in 1962, no new entry for settlement has been permitted. See 52 Fed.Reg. 23473–75 (June 22, 1987).

We need not determine when this portion of public land was closed to entry and settlement to satisfy ourselves that Kent's occupancy did not predate closure for settlement. By whatever calculation, Klamath National Forest was closed long before 1984 when Kent first occupied this parcel of land.

**4.** Kent's certificate of eligibility, dated June 18, 1981, provides in pertinent part: "This is to certify that Lavon R. Kent ... a California Indian, born May 6, 1947, is eligible as an Indian to receive land on the public domain ... or in a national forest under Section 31 of the [Forest Allotment Act]."

Kent did not raise this argument in district court, and decision of this question involves issues of statutory interpretation and regulatory authority difficult to decide on this undeveloped record.[5] We will normally not consider on appeal an argument not raised in district court; one exception occurs when review of a newly presented issue is essential "to prevent a miscarriage of justice." *United States v. Greger,* 716 F.2d 1275, 1277 (9th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984). We find no such miscarriage of justice here. At least to the time of argument, Kent had made no attempt to apply for an allotment. Nor had the Secretary made, or been called upon to make, the determination that the land in issue was more valuable for agricultural or grazing purposes than for timber, a prerequisite to allotment of the parcel under section 337. We see no reason to deviate from our normal rule precluding review of issues not raised in the district court.[6]

### III. Whether 36 C.F.R. § 261.10(b) Includes a Mens Rea Element

There is one issue, however, that we address even though Kent did not raise it in the district court. That is the question whether there is any "mens rea" required to establish a violation of 36 C.F.R. § 261.-10(b). We address that issue now because we addressed it in our prior opinion, after ordering additional briefing on the question. Concern over our treatment of the issue led to the government's petition for rehearing, and to our granting of that petition. We now hold that section 261.10(b) does not contain a mens rea element.[7]

Section 261.10(b) states:

The following are prohibited:

. . . .

(b) Taking possession of, occupying, or otherwise using National Forest System lands for residential purposes without a special-use authorization, or as otherwise authorized by Federal law or regulation.

36 C.F.R. § 261.10(b) (1990).

Our determination that there is no mens rea element contained in this regulation is compelled by our decision in *United States v. Wilson,* 438 F.2d 525 (9th Cir.1971), which interpreted a similar Forest Service regulation, 26 C.F.R. § 261.6(a). That regulation states:

---

**5.** The dissent contends that Kent's certificate of eligibility, when viewed in connection with the Forest Allotment Act, makes it reasonable for her to have believed that it was lawful for her to settle on the tract that she selected. While we do not rule upon the issue, we question the soundness of that view. Kent's certificate of eligibility was issued by the Superintendent of the Hoopa Indian Reservation; it does not purport to award any particular tract in the national forest. National forests are administered by the Secretary of Agriculture, who may not grant an allotment without first determining that the tract in question is more valuable for agriculture or grazing than for timber. 43 C.F.R. § 2533.1. *Cf. Hopkins v. United States,* 414 F.2d 464, 467–68 (9th Cir.1969) (General Allotment Act did not give Indian vested right to allotment of land simply by his selecting and settling on it; Secretary must determine that lands can support settler by grazing or agriculture before approving allotment).

**6.** For the same reasons, we decline to address the question whether the regulation gave fair notice to Kent that her conduct was prohibited. This due process issue raises somewhat the same question as the allotment issue discussed above: whether it is sufficiently clear that

Kent's occupancy was not "otherwise authorized by Federal law or regulation." 36 C.F.R. § 261.-10(b). Kent never contended in district court that her occupancy was authorized by any federal law or regulation, nor did she contend that she believed it was so authorized. In its petition for rehearing, the government asserts that, if notice had been an issue, it would have introduced evidence that Kent had been warned more than once by the Forest Service that her occupancy was illegal.

We also decline to address one other argument that Kent raises for the first time on appeal: her contention that the government breached its trust responsibility to her as an Indian by prosecuting her instead of assisting her in securing an allotment. No such argument was presented to the district court. Review is not essential to prevent a miscarriage of justice. *Greger,* 716 F.2d at 1277.

**7.** We address the issue because our prior opinion, though we withdraw it today, might cause misimpressions about the status of our earlier decisions dealing with various forest regulations. Our review of the issue is necessary to "preserve the integrity ... of the judicial process." *Greger,* 716 F.2d at 1277.

The following are prohibited:

> (a) Cutting or otherwise damaging any timber, tree, or other forest product, except as authorized by a special-use authorization, timber sale contract, or Federal law or regulation.

In *Wilson*, we held that willfulness is not an element of the offense of violating section 261.6(a), noting that

> [t]here is reason to believe that the omission of mens rea was intentional. The necessity of proving in each instance that the trespasser knew that he had crossed the often poorly marked boundaries of a national forest might make the regulatory scheme excessively difficult to enforce.

*Wilson*, 438 F.2d at 525.

We do not see how section 261.10(b) can be distinguished from section 261.6(a) in regard to this issue. The interpretation Kent urges would not only apply to situations as sympathetic as hers,[8] but to the enforcement of this regulation against any person occupying land in any federal forest. Such an interpretation would, indeed, "make the regulatory scheme excessively difficult to enforce." *Id.*

Strict criminal liability is strong medicine,[9] and, accordingly, we have read criminal intent requirements into some Forest Service regulations, where their language remotely suggested it. In *United States v. Semenza*, 835 F.2d 223 (9th Cir.1987), we interpreted another Forest Service regulation as containing a requisite element of willfulness. That regulation, 36 C.F.R. § 261.7(a), prohibits "allowing unauthorized livestock to enter or be in the National Forest System." We construed "allowing" as implying a mental element, a permission, and required the government to prove that the violator willfully allowed or willfully failed to prevent the cattle from entering the forest. *Id.* at 225–25. Also, in *United States v. Launder*, 743 F.2d 686, 689 (9th Cir.1984), we interpreted a statute making it a crime to "permit" or "suffer" a fire to spread out of control in a national forest to require proof of a willful act or willful failure to act. We pointed out that the words "permit" or "suffer" were "not the language of strict liability." *Id.*

The present case, however, cannot be controlled by *Semenza* or *Launder* because section 261.10(b) contains no similar language implying a requisite state of mind. Like the language construed in *Wilson*, the language of section 261.10(b) speaks solely of action, with no reference to volition. We do not see how one who wanders onto a national forest and cuts trees can be held strictly liable when one who wanders on and establishes a residence is not. We conclude, therefore, that section 261.10 does not require violations to be "knowing" or "willful"; there is no criminal intent element in the crime defined by that regulation.

## CONCLUSION

The judgment of the district court convicting Kent of violation of 36 C.F.R. § 261.10(b) is

AFFIRMED.

PREGERSON, Circuit Judge, dissenting:

I agree with the majority that the district court properly ruled that Lavon R. Kent had no individual aboriginal right to the disputed parcel of land on Sandy Bar Creek. But I would reverse Kent's convic-

---

**8.** The district court was not blind to the sympathetic aspects of Kent's case. He offered to sentence her to probation if she moved off the land. The offer was refused.

**9.** The harshness of imposing strict liability here is mitigated by the fact that this regulation conforms to the description of a "public welfare offense" as described in *Morissette v. United States*, 342 U.S. 246, 253–257, 72 S.Ct. 240, 246, 96 L.Ed. 288 (1951), for which the Court deemed it appropriate that the crime "depend on no mental element but consist only of forbid-

den acts or omissions." *Id.* at 252–53, 72 S.Ct. at 244. The Court explained:

> The accused, if he does not will a violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation.

*Morissette*, 342 U.S. at 256, 72 S.Ct. at 246.

tion for unauthorized residential occupancy of national forest land for two reasons. First, the government failed to prove that Kent had the mens rea necessary to violate 36 C.F.R. § 261.10(b). Second, because the relevant statutes and regulations did not give Kent sufficient notice that her conduct might have been unlawful, due process will not permit her conviction to stand.[1] I therefore respectfully dissent.

### I

The information charging Kent with violating 16 U.S.C. § 551 and 36 C.F.R. § 261.10(b) alleged that Kent "did *knowingly* take possession of, occupy and otherwise use National Forest System lands for residential purposes without a special-use authorization, or as otherwise authorized by Federal law or regulation...." (Emphasis added).[2] "Knowingly" requires the government to prove as an element of the offense that Kent "voluntarily and intentionally and not by accident or mistake" engaged in the prohibited conduct. *United States v. Jewell*, 532 F.2d 697, 699 (9th Cir.) (en banc), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976); 1 Devitt and Blackmar, *Federal Jury Practice and Instructions*, § 14.04 (3d ed. 1977). In the present case, unresolved ambiguities in the law (discussed below) relating to allotments of national forest system land to Indians

preclude a finding that Kent knew her occupancy of the site at Sandy Bar Creek was not "authorized by Federal law or regulation." 36 C.F.R. § 261.10(b).

Kent's certificate of eligibility, issued by the Department of the Interior, states that Kent is eligible "to receive land ... in a national forest under Section 31 of the [Forest Allotment Act]." Section 31 of the Forest Allotment Act, 25 U.S.C. § 337,[3] states that the government is authorized to make allotments "to any Indian *occupying, living on, or having improvements on land included within any such national forest....*" (Emphasis added). This language contemplates that an Indian will occupy land within a national forest before applying for an allotment.

Despite the plain language of the statute, the government interprets the Forest Allotment Act to mean that occupancy of national forest land before applying for an allotment is prohibited by 16 U.S.C. § 551 and 36 C.F.R. § 261.10(b) unless the Indian can trace continuous ancestral occupancy of the site back to 1910. According to the government's interpretation, because Kent cannot trace continuous familial occupancy of the site in question back to 1910, she may not occupy the land before receiving an allotment, even if she is ultimately entitled to one. The government makes these

---

1. "The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). Although she did not raise these issues before the trial court, to "prevent a miscarriage of justice," *United States v. Greger*, 716 F.2d 1275, 1277 (9th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984), I would exercise our discretion to address Kent's fully-briefed, legal arguments that (1) 36 C.F.R. § 261.10(b) includes a mens rea element and (2) the applicable statutes and regulations provided insufficient notice that her conduct was prohibited.

2. The information thus specified the element of criminal intent that was not supplied by 36 C.F.R. § 261.10(b). *See United States v. Morrison*, 536 F.2d 286, 288 (9th Cir.1976) (indictment must specify intent if statute fails to do so).

3. 25 U.S.C. § 337 states in full:

 The Secretary of the Interior is authorized, in his discretion, *to make allotments within the national forests* in conformity with the general allotment laws, *to any Indian occupying, living on, or having improvements on land included within any such national forest* who is not entitled to an allotment on any existing Indian reservation, or for whose tribe no reservation has been provided, or whose reservation was not sufficient to afford an allotment to each member thereof. All applications for allotments under the provisions of this section shall be submitted to the Secretary of Agriculture who shall determine whether the lands applied for are more valuable for agricultural or grazing purposes than for the timber found thereon; and if it be found that the lands applied for are more valuable for agricultural or grazing purposes, then the Secretary of the Interior shall cause allotment to be made as herein provided.
 (Emphasis added).

arguments even though the Forest Allotment Act and related regulations do not state that continuous occupancy is required and even though Kent has been certified as eligible to receive an allotment of land in a national forest.

No reported cases have interpreted 25 U.S.C. § 337 to determine which Indians are in fact entitled to an allotment or whether occupancy before applying for an allotment is allowed or required by the statute. It is not necessary to decide these issues here; rather it is sufficient to note that they are open questions. Given the current unsettled state of the law and the information available to Kent, she could reasonably believe that she was permitted by federal law to settle on the land at Sandy Bar Creek. The stipulated facts in this case and the government's unsupported interpretation of the applicable laws cannot sustain a finding beyond a reasonable doubt that Kent had the requisite mens rea to be convicted of unauthorized residential occupancy of national forest system land.

In supplemental briefing, the government argues that 36 C.F.R. § 261.10(b) sets forth a strict liability offense, despite the fact that the information alleged that the offense was "knowingly" committed. The government bases its argument on the lack of an explicit mens rea requirement in section 261.10(b). Criminal offenses requiring no mens rea, however, are generally disfavored. *Liparota v. United States,* 471 U.S. 419, 426, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985). "[C]ertainly far more than the simple omission of the appropriate [mens rea] from the statutory definition is necessary to justify dispensing with an intent requirement...." *Id.* (quoting *United States v. United States Gypsum Co.,* 438 U.S. 422, 438, 98 S.Ct. 2864, 2874, 57 L.Ed.2d 854 (1978)).

To avoid a construction of the regulation that would "criminalize a broad range of apparently innocent conduct," *Liparota,* 471 U.S. at 426, 105 S.Ct. at 2088, I read section 261.10(b) to "require[ ] a showing that the defendant knew [her] conduct to be unauthorized" by the regulation before

criminal punishment is imposed. *Id.* at 425, 105 S.Ct. at 2088; *see also United States v. Nofziger,* 878 F.2d 442, 454 (D.C.Cir.) (interpreting an ambiguous subsection of the Ethics in Government Act as requiring the government to demonstrate that the defendant had knowledge of the facts that made his conduct criminal), *cert. denied,* 493 U.S. 1003, 110 S.Ct. 564, 107 L.Ed.2d 559 (1989); *United States v. Sherbondy,* 865 F.2d 996, 1009 (9th Cir.1988) (rule of lenity requires that "[w]here the language of a penal statute admits of more than one interpretation, courts should choose least harsh construction").

I disagree with the majority's contention that section 261.10(b) requires application of a strict liability standard because it is a "public welfare offense," i.e., one which "render[s] criminal a type of conduct that a reasonable person should know is subject to stringent public regulation and may seriously threaten the community's health or safety." *Liparota,* 471 U.S. at 433, 105 S.Ct. at 2092. Occupation of Forest Service lands is not an inherently dangerous activity, and the government has not submitted any evidence that Kent's occupancy endangered the public.

The majority concludes that a Ninth Circuit case, which construed a different Forest Service regulation (26 C.F.R. § 261.-6(a)), controls this case. *See United States v. Wilson,* 438 F.2d 525 (9th Cir.1971). I disagree. In *Wilson,* we held that the Forest Service's regulation prohibiting the cutting of timber in the national forests is a strict liability offense. The cutting of timber, however, is a "public welfare offense" that causes irreparable harm to our national forests. On the other hand, a mere occupier of land like Kent does not "seriously threaten the community's health or safety" and can be ejected in a civil action.

II

Even if section 261.10(b) is interpreted as a strict liability offense, I believe Kent's conviction cannot stand. As applied to Kent, the relevant statutes and regulations did not provide sufficient notice that her occupancy of the site in question may be

illegal. Due process requires that a penal statute give fair warning of what the law "commands or forbids." *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939). "A defendant is deemed to have fair notice of an offense if a reasonable person of ordinary intelligence would understand that his or her conduct is prohibited by the rule in question." *United States v. Hogue*, 752 F.2d 1503, 1504 (9th Cir.1985). *Cf. Dunn v. United States*, 442 U.S. 100, 112, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979) (Supreme Court's "long-established practice of resolving questions concerning the ambit of a criminal statute in favor of lenity ... is rooted in *fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited* ") (citations omitted) (emphasis added).

Section 261.10(b) in clear language exempts anyone "otherwise authorized under Federal law" from the prohibition against occupying national forest land for residential purposes. As discussed above, this exception may reasonably be understood to apply to Kent. She has a certificate of eligibility which states that she is eligible for an allotment of land in a national forest. Moreover, the plain language of the Forest Allotment Act encourages Kent to occupy the site as a condition to obtaining an allotment of national forest land.

Neither the allotment statute nor the corresponding regulations state that there is a time limit within which an Indian must apply for an allotment after receiving a certificate of eligibility. Nor do they state that continuous ancestral occupancy of the site since 1910 is required before an Indian is eligible to receive an allotment of land in a national forest. I find that the confused and contradictory information available to Kent, statutory and otherwise, failed to provide her with sufficient notice that her conduct might be criminally unlawful. Thus, her occupancy of Sandy Bar Creek cannot be used as the basis for a criminal prosecution under 16 U.S.C. § 551 and 36 C.F.R. § 261.10(b).

## III

The underlying questions regarding the rights conferred by Kent's certificate of eligibility and the meaning of the Forest Allotment Act should be resolved before Kent is held criminally responsible for unauthorized residential occupancy. The present criminal prosecution is essentially a land dispute between Kent and the Forest Service. Such a dispute should be adjudicated as a civil matter, where the meaning of the relevant statutes and regulations can be fully examined and where Kent's ultimate right to occupy the land can be determined. *See United States v. Miller*, 659 F.2d 1029, 1030 (10th Cir.1981) ("criminal process should not be used for the purposes of settling a land dispute, and upon that basis we reverse the conviction"); *United States v. Esposito*, 754 F.2d 521, 524 (4th Cir.1985) ("civil rather than criminal proceedings are appropriate to adjudicate disputes between holdover tenants and the government").

The government indicated at oral argument that it knew of no other reported case in which an Indian has been criminally prosecuted for violating 36 C.F.R. § 261.10(b). Given this history, one wonders why the government instituted criminal proceedings in this case, especially since less drastic civil measures were available. *See, e.g., United States v. Langley*, 587 F.Supp. 1258, 1265 (E.D.Cal.1984) (Forest Service regulations may be enforced by injunction, as well as by criminal action). If Kent now applies for an allotment, the issue can be resolved in those proceedings. Alternatively, if she fails to apply for an allotment, the government can bring a civil action that will lead to a proper resolution of the underlying land dispute.