UNITED STATES of America, Appellee,

v.

John E. JOHNSON, III, William V. LeTempt, Jeffrey O. Pike, Daniel Gallagher, Appellants.

No. Crim. 1:96CR98.

United States District Court, W.D. North Carolina, Asheville Division.

Dec. 11, 1997.

---

Mark T. Calloway, U.S. Attorney, Thomas R. Ascik, Asst. U.S. Attorney, Asheville, NC, for Appellee.

Sean P. Devereux, Pitts, Hay, Hugenschmidt & Devereux, P.A., Asheville, NC, for Appellants.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on a timely appeal from the final order of convic-

tion and sentence of the Appellants by the Magistrate Judge.

## I. JURISDICTION

Rule 58(g) of the Federal Rules of Criminal Procedure grants this Court jurisdiction to hear this appeal.

## II. STANDARD OF REVIEW

■ The Court reviews an appeal from a conviction by the Magistrate Judge using the same standards as those applied to district court judgments by courts of appeals. Fed. R.Crim.P. 58(g)(2)(D). Accordingly, the construction of federal regulations is given *de novo* review, *United States v. Boynton*, 63 F.3d 337, 342 (4th Cir.1995), as are any constitutional challenges to the judgment of conviction. *United States v. Daughtrey*, 874 F.2d 213, 218 (4th Cir.1989); *United States v. Perez–Torres*, 15 F.3d 403, 406 (5th Cir.), *cert. denied*, 513 U.S. 840, 115 S.Ct. 125, 130 L.Ed.2d 69 (1994).

## III. FACTUAL AND PROCEDURAL HISTORY

Appellants Johnson, LeTempt, Pike and Gallagher are members of the "Rainbow Family" ("Family"), a loosely-structured group of individuals that makes regular use of national forests in North Carolina for gatherings, especially during the summer solstice. A special-use authorization permit must be obtained for a non-commercial group activity on national forest lands "that involves a group of 75 or more people, either as participants or spectators." 36 C.F.R. §§ 251.50, 251.51, 261.10(k).

Evidence at trial showed that members of the Family met at Puncheon Camp, a site within the Pisgah National Forest in Madison County, North Carolina, from June 14 to June 18, 1996. Two of the Defendants, LeTempt and Pike, were timely informed of the necessity of obtaining a special-use permit if the gathering reached 75 people. On the evening of June 17, there ensued an hour-long discussion between Forest Service officers and the Defendants, during which the officers informed the group that their numbers at that point exceeded the 74 person limit.

The Defendants refused to sign a permit application for varying reasons and were cited by the officers under 36 C.F.R. § 261.10(k), which prohibits "use or occupancy of National Forest System land or facilities without special-use authorization when such authorization is required."

Any person engaged in a "special use" of National Forest System lands must apply for and obtain a special use authorization (permit) from an authorized Forest Service Officer. 36 C.F.R. § 251.50(a). This section defines special uses to be any uses other than timber disposal, mineral extraction and livestock grazing. Section 251.50(c) exempts from the permitting requirement noncommercial recreational uses, except when such use meets the definition of non-commercial group-use in § 251.51. Group-use is defined in that section as "an activity conducted on National Forest System lands that involves a group of 75 or more people, either as participants or spectators."

At trial before the Magistrate Judge, Defendants were found guilty of violating 36 C.F.R. § 261.10(k), each was assessed $10 and fined $50. From the judgments entered, Defendants appeal.

## IV. DISCUSSION

### A.

■ First, Appellants claim that their convictions should be reversed on grounds that the statute under which they were convicted, 36 C.F.R. § 261.10(k), requires proof of *mens rea* for each element of the offenses, in this case that each Family member was aware that the numbers of their group exceeded the 74 person limit. While the Supreme Court has held that intent must be proved for every element of a federal crime derived from the common law, whether or not Congress has expressly included a *mens rea* element, *United States v. Balint*, 258 U.S. 250, 252, 42 S.Ct. 301, 302, 66 L.Ed. 604 (1922), the same does not hold true for every regulatory or "public welfare" offense that is purely statutory. *Id.*

Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt,

but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize ... [t]he accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect ... Also, penalties commonly are relatively small, and conviction does not do grave damage to an offender's reputation. *Morissette v. United States,* 342 U.S. 246, 255–56, 72 S.Ct. 240, 245–46, 96 L.Ed. 288 (1952).

■ To determine whether an intent requirement may be inferred for this regulatory infraction, a reviewing court must look first to the language of the statute. *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). There is no explicit reference to a scienter requirement for any element of the offense described in 36 C.F.R. §§ 251.50, 251.51, and 261.10(k). As to the public welfare or regulatory purpose of the statute, there can be no doubt that regulations of this sort aid the Forest Service in its role of protecting lands under its stewardship and promoting public access, while controlling the potentially deleterious effects that unregulated group-use may have on public resources and health. Further, other courts have declined to impose a scienter requirement when reviewing convictions based upon similar Forest Service regulations. *United States v. Doremus,* 888 F.2d 630, 634 (9th Cir.1989), *cert. denied,* 498 U.S. 1046, 111 S.Ct. 751, 112 L.Ed.2d 772 (1991) **(holding that in the commercial mining context, no knowledge requirement must be met in order to convict parties of mining without the appropriate permits).**

In *United States v. Kent,* 945 F.2d 1441 (9th Cir.1991), a Native American defendant argued that 26 C.F.R. § 261.10(b), which prohibits the residential use of National Forest land without a permit, requires proof that the defendant was aware that he was occupying national forest land. The Ninth Circuit held that the statute did not contain a *mens rea*

element, citing its holding in *United States v. Wilson,* 438 F.2d 525 (9th Cir.1971), that it was not necessary to prove a mental element in order to successfully prosecute a violation of 26 C.F.R. § 261.6(a), which prohibits logging without a special use permit. The Ninth Circuit reasoned that,

[t]here is reason to believe that the omission of mens rea [by congress] was intentional. The necessity of proving in each instance that the trespasser knew that he had crossed the often poorly marked boundaries of a national forest might make the regulatory scheme excessively difficult to enforce.

*Kent,* 945 F.2d at 1446 *(citing Wilson,* 438 F.2d at 525).

The same reasoning obtains in the instant case, where proving that a defendant was aware that 75 or more people were present in his group would be an exceedingly onerous burden on the prosecution, and would in large part negate the regulatory purpose of the statute. As in *Kent,* it is clear that the omission of a *mens rea* requirement in 36 C.F.R. §§ 251.50, 251.51, and 261.10(k) reflects an intent to make this type of violation a strict liability offense. This is further confirmed by the minor penalties imposed for violating 36 C.F.R. § 261.10(k), which can in no way be construed to do "grave damage to an offender's reputation." *Morissette,* 342 U.S. at 256, 72 S.Ct. at 246.

The trial record in this case reflects the protracted efforts of the Forest Service officers to obtain regulatory compliance before citing the Appellants. Both testimony and videotaped evidence reveal that the officers informed Appellants that their numbers had surpassed the statutory limit, and required them to apply for a non-commercial group-use permit. The officers produced a copy of such an application, but all four Appellants, offering different reasons, refused to sign.

**B.**

■ Appellants further claim that their prosecution under the Forest Service's group-use permitting requirement violates their First Amendment rights of free speech. This Court agrees with the findings of other

district courts that the "expressive" nature of Family gatherings brings it under the purview of First Amendment protections of speech and association. *United States v. The Rainbow Family (Rainbow I),* 695 F.Supp. 294, 308 (E.D.Tex.1988). "Regulation of speech activity on governmental property that has been traditionally open to the public for expressive activity, such as public streets and parks, is examined under strict scrutiny." *United States v. Kokinda,* 497 U.S. 720, 727, 110 S.Ct. 3115, 3119, 111 L.Ed.2d 571 (1990) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983)).

■ The Supreme Court addressed a similar factual situation in *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 298, 104 S.Ct. 3065, 3071, 82 L.Ed.2d 221 (1984), in which it held that the Park Service's regulation barring overnight camping in National Memorial-core parks was a constitutionally valid time, place or manner restriction. *Clark* also provides a structural framework for the analysis of the constitutionality of the Forest Service regulation in this case:

Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions. We have often noted that restrictions of this kind are valid provided [1] that they are justified without reference to the content of the regulated speech, [2] that they are narrowly tailored to serve a significant governmental interest, and [3] that they leave open ample alternative channels for communication of the information.

*Id.,* at 293, 104 S.Ct. at 3068. We address these issues in order.

■ In *Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), the Supreme Court found that a municipal ordinance requiring performers using the city's bandshell to use a sound system and operator provided by the city was a content neutral restriction intended to protect citizens living nearby.

The principal inquiry in determining content neutrality ... in time, place or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.

*Id.,* at 791, 109 S.Ct. at 2753 (citations omitted).

Section 261.1a of 36 Code of Federal Regulations, provides an statement of purpose for all the § 261 prohibitions:

[A] District Ranger ... may issue special-use authorizations ... authorizing the use of a road, trail, area, river, lake, or other part of the National Forest System ... In authorizing such uses, the Forest Officer may place such conditions on the authorization as that officer considers *necessary for the protection or administration of the National Forest System, or for the promotion of public health, safety, or welfare.*

*Id.* **(emphasis added).** As noted above, the combined effect of 36 C.F.R. §§ 251.50, 251.51 and 261.10 is to require a special use authorization permit for non-commercial group-use of national forest system lands where the group consists of 75 or more persons, and to subject unauthorized group-use to criminal penalties. The current regulations governing permitting of non-commercial group use do not facially discriminate between expressive and other types of activities, resulting in an "invidious classification" as was found unconstitutional in *Rainbow I,* 695 F.Supp. at 309. Since the regulations here do not distinguish between gatherings for expressive and other purposes, but merely require all non-commercial groups in excess of 74 persons to apply for special use authorization, they are neutral as to the content of the Family's expressive activity—even if they have the incidental effect of requiring a large percentage of Family gatherings to obtain permits because their numbers regularly exceed 74 persons.

In promulgating these regulations, Congress and the Secretary of Agriculture have decided that non-commercial group use should be regulated by the permitting process, through which conditions may be im-

posed to protect the areas used by large groups and to promote public health, safety, and welfare. Use of North Carolina national forest lands by the Family in the past has resulted in some temporary deterioration of the gathering site.[1] *United States v. The Rainbow Family (Rainbow II)*, 695 F.Supp. 314, 328 (E.D.Tex.1988). Since improper or inadequate waste disposal practices can have potentially serious adverse effects on public health, *id.*, at 329, and large group use can result in inadequate trash removal and restoration of the sites used, *id.*, at 328, it cannot seriously be questioned that the non-commercial group-use regulations serve a significant governmental objective. Further, the permitting process required by the regulations does not function as a bar to large, noncommercial group use, but merely requires such groups to obtain special use authorization, subject to conditions imposed by the Forest Service. If smaller groups were required to apply for such authorization, the regulation could eventually cast too-wide a net to pass constitutional muster. However, this Court concludes that the registration requirement of recreational groups consisting of 75 or more people is narrowly tailored to the significant governmental purpose of protecting lands in the national forest system and promoting public health, safety and welfare.

Finally, the Court addresses the availability of "ample alternative channels" for the Family's expressive activities. *Clark*, 468 U.S. at 293, 104 S.Ct. at 3068. It is clear that members of the Family may meet in smaller groups if they wish to make use of National Forest lands and to avoid triggering the permitting requirement, or they may meet on lands outside the National Forest system. It is only the "speech" involved in large group use that is incidentally burdened by the time, place or manner restrictions of the permitting process, and this leads the Court to conclude that "ample alternative channels" for the Rainbow's expressive activ-

ity have been left open by the statute and regulations in question in this case.

Accordingly, this Court finds that the regulations governing group-use of National Forest lands, 36 C.F.R. §§ 251.50, 251.51, 261.10(k), do not unconstitutionally burden the Rainbow Family's First Amendment rights of freedom of expression.

### V. ORDER

IT IS, THEREFORE, ORDERED that the orders of convictions and sentences of the Appellants are hereby **AFFIRMED,** this appeal is hereby **DISMISSED,** and Appellants are ordered to comply forthwith with the Judgment heretofore entered by the Magistrate Judge.

---

1. "Regarding the environment, the evidence in the record does reveal that—at the North Carolina gathering at least—garbage was left at the gathering site, automobiles were abandoned, pit latrines were not properly closed, and rehabilita-

tion work on the site was not done effectively." *Rainbow II*, 695 F.Supp. at 328 (**resulting in a limited permanent injunction ordering the Family to comply with reasonable requests to clean and restore their gathering sites.**)